UNITED STATES of America, Appellee,

v.

Raymond Jesse NEWTON, Appellant.

No. 84–1329.

United States Court of Appeals, Eighth Circuit.

Submitted Sept. 14, 1984.

Decided Feb. 27, 1985.

**54**

L. Patrick O'Brien, Kansas City, Mo., for appellant.

A. Mary Sterling, Asst. U.S. Atty., Kansas City, Mo., for appellee.

Before HEANEY, ROSS and BOWMAN, Circuit Judges.

HEANEY, Circuit Judge.

Raymond Jesse Newton appeals from a final district court [1] judgment entered after a jury verdict finding him guilty of intentionally aiding and abetting the interstate transportation of a falsely made, forged and counterfeited security in violation of 18 U.S.C. §§ 2314 and 2 (1982). For reversal, Newton argues that the evidence is insufficient to support the conviction. We affirm.

■ In reviewing the sufficiency of the evidence to support a criminal conviction, we view the evidence in the light most favorable to the government, resolve evidentiary conflicts in favor of the government, and accept as established all reasonable inferences that may logically be drawn from the evidence. *United States v. Resnick*, 745 F.2d 1179, 1185 (8th Cir.1984). Although the evidence must be consistent with guilt, it need not be inconsistent with every other reasonable hypothesis. *Klein v. United States*, 728 F.2d 1074, 1075 (8th Cir.1984). Circumstantial evidence is intrinsically as probative as direct evidence and may be the sole support for a conviction. *Id.*

■ Newton admits that in June, 1983, a counterfeited and forged cashier's check was transported from Kansas to Missouri and used to defraud a bank of large sums of money, but argues that there is insufficient evidence that he intentionally aided and abetted this scheme. We disagree because we find the evidence fully supports the jury's verdict that Newton intentionally associated himself with the fraudulent venture, intentionally took action to assure its

1. The Honorable Howard F. Sachs, United States District Judge for the Western District of Missouri.

success, and collected his share of its proceeds.

Our review of the evidence adduced at trial reveals the following facts. In June, 1983, Brand Marcus Montgomery approached Robert Cullen and asked him to open a bank account and deposit a $25,000 cashier's check, which later proved to be counterfeited and forged. Thereafter, Newton asked his friend Cullen whether he was going to deposit the check. Cullen understood that for his participation he would be given up to $10,000 to purchase a car.

In furtherance of the scheme, Newton, Montgomery and Cullen went to the Centerre Bank in Kansas City, Missouri, where Cullen opened a checking account in his name with $100 in cash. For his address on the bank account, Cullen used Newton's mother's address of 3833 Wabash Avenue, Kansas City, Missouri 64130. After opening the account, Cullen returned to the car where Newton and Montgomery were waiting. Later that afternoon, Montgomery brought the counterfeited and forged $25,000 check to Cullen's home. Montgomery and Cullen then drove to pick up Newton in Kansas City, Kansas, and returned to the Centerre Bank in Kansas City, Missouri, where Cullen deposited the counterfeited and forged $25,000 cashier's check drawn on the People's Mercantile Bank of Kansas City, Missouri.

Newton, Cullen and Montgomery then went shopping for cars at Hal Quinn Buick and Underwriter's Sales Company. At Hal Quinn Buick, Cullen purchased a Buick Riviera with a $9,500 check drawn on the newly opened account. Cullen apparently tried to use Newton's mother's address of 3833 Wabash, but instead wrote 3837 Wabash, Kansas City, Missouri.

The next morning, Cullen, acting upon Montgomery's request, returned to the Centerre Bank and withdrew $5,000 in cash and a $7,000 cashier's check. Cullen then met Montgomery and Newton and gave them the $12,000. Later that day, an individual who identified himself as Cullen purchased a black 1981 Lincoln Town car from Underwriter's Sales, using the $7,000 cashier's check drawn on the Centerre Bank account. The buyer told the salesmen that he wanted the title to the car to be in the name of Raymond Newton. The salesman told the buyer that this would mean that Newton owned the car. The buyer agreed to this, and filled out all the documents in Newton's name, listed his address as 3833 Wabash, Kansas City, Missouri 64109, and signed his name in several places as "Raymond Newton." Cullen's name does not appear anywhere on the purchase documents. Although Newton later claimed that he did not own the 1981 Lincoln because it belonged to Cullen, he parked the car at his home and his mother's home and, up through the date of the trial below, he and his wife drove it as if they owned it. In September, 1983, Cullen borrowed the Lincoln from Newton, and when Cullen failed to return it, Newton reported to the police that his 1981 Lincoln had been stolen. At trial, Cullen testified that he did not fill out the purchase documents for the 1981 Lincoln, that the handwriting on the documents is not his, but that he is familiar with Newton's handwriting and that the documents are filled out in Newton's handwriting. The jury could properly have discredited Newton's claim that Cullen owned the 1981 Lincoln and that Newton had simply borrowed it, and could properly have concluded that Newton had purchased the car with the proceeds of the fraudulent check cashing scheme.

The jury could also have properly rejected Newton's claim that he was not a participant in the check cashing scheme. Newton originally told the Federal Bureau of Investigation that he had never touched the counterfeited and forged cashier's check, but, at trial, the government proved that Newton's fingerprint was on the cashier's check.

Newton claims that the evidence only proves that he had prior knowledge of the counterfeited and forged check scheme, and that he was present outside the bank when Cullen made the fraudulent transactions. He contends that the government

has failed to meet its burden of proving aiding and abetting under the established standard set forth in *United States v. Peoni*, 100 F.2d 401, 402 (2d Cir.1938), which requires "that he in some sort associate himself with the venture, that he participate in it as in something that he wishes to bring about, that he seek by his action to make it succeed." We believe that the government's evidence meets this standard. The jury was instructed that the prosecution must show that the defendant intentionally aided and abetted the interstate transportation of the counterfeited and forged check and that to aid and abet, the accused must willfully participate in the criminal venture or willfully seek by his act or omission to make the criminal venture succeed. The jury was instructed that presence at the scene of the crime and knowledge that a crime was being committed were not sufficient unless they found beyond a reasonable doubt that the defendant was a willful participant and not a mere knowing spectator. We believe that the evidence fully supports the jury's conclusion that Newton intentionally aided and abetted the interstate transportation of the counterfeited and forged check.

Affirmed.