**UNITED STATES of America, Appellee,**

v.

**Ronald R. ERDMAN, Appellant.**

**No. 91–1382ND.**

United States Court of Appeals,
Eighth Circuit.

Submitted Oct. 30, 1991.

Decided Jan. 8, 1992.

Alan J. Sheppard, Fargo, N.D., for appellant.

Norman G. Anderson, Fargo, N.D., for appellee.

Before LAY, Chief Judge, BRIGHT, Senior Circuit Judge, and MAGILL, Circuit Judge.

MAGILL, Circuit Judge.

Ronald Erdman appeals from his conviction for harboring or concealing a fugitive in violation of 18 U.S.C. § 1071 (1988). Erdman argues that there was insufficient evidence to support his conviction. He also argues that the trial court[1] erred in its definition of "harboring or concealing," in its handling of a jury request for transcripts of parts of the trial testimony, and in its admission of purely speculative evidence. We affirm the conviction. Because we find Erdman's other claims meritless, we discuss only the sufficiency of the evidence claim.

## I.

On September 14, 1989, a warrant was issued for the arrest of Merlyn Yagow in connection with a bankruptcy fraud indictment. The same day, FBI agent Kenneth M. Aldridge attempted to locate Yagow by contacting Yagow's brother, Morris. Aldridge informed Morris of the warrant, but Morris said he did not know where Yagow was. Subsequently, agent Aldridge regularly contacted Yagow's family and friends in his attempt to locate Yagow. Agent

Aldridge testified that whenever he contacted anyone, he told them about the warrant and usually showed them a copy.

At about the same time the warrant was issued, Yagow left his home near Gwinner, North Dakota, where he lived with his wife and child. He went to Clay County, Minnesota, near Barnesville, where he met Erdman, whom he had known since 1986, at the home of a mutual friend. Shortly after Yagow's arrival in Barnesville, Erdman painted Yagow's green van a maroon color. In early October, Erdman helped Yagow find work hauling sugar beets, and then helped Yagow do the actual hauling. Between January and March 1990, Craig Baker, a Clay County (Minnesota) Deputy Sheriff, repeatedly saw Yagow's van parked at a trailer house he believed belonged to Erdman.[2] On March 1, 1990, Deputy Baker took a picture of the van parked at the trailer.

On March 16, 1990, agent Aldridge and Erdman met in Fargo. Both admit that they discussed the whereabouts of Yagow. Agent Aldridge testified that he told Erdman about the arrest warrant, that Erdman already knew about the warrant, that Erdman told him that the warrant was not valid because it was not signed by a judge, and that Erdman said he did not know what kind of vehicle Yagow was driving. Erdman denied that agent Aldridge told him about the warrant, and claimed that he did not know about the warrant until July 1990. He also testified that he could not remember if agent Aldridge asked him what kind of vehicle Yagow was driving.

On May 2, 1990, Yagow opened a checking account at Union State Bank, Fargo, in the name of First Dakota Trust. The next day he attempted to cash a check drawn on his account, but the bank refused because the check he had deposited to open the account had not cleared yet. On May 8, Erdman attempted to cash a check drawn on Yagow's account. Again the bank re-

---

1. The Honorable Rodney S. Webb, United States District Judge for the District of North Dakota.

2. In fact, Erdman had sold the trailer house and the land to Gerald Stuhr in 1984. However, Erdman had the keys to the trailer house and to the gate leading to the driveway. Apparently, he functioned as caretaker.

fused to cash the check. There was conflicting testimony about Erdman's attempts to cash checks on this account. A teller at the bank's drive-up window testified that Erdman unsuccessfully attempted to cash three different checks on that account during May, two made payable to Erdman and one made payable to cash. Erdman testified that he twice attempted to cash only one $550 check that he had received in the mail. He also testified that he did not know who sent the check to him, but assumed it was someone who owed him money.

On July 9, 1990, agent Aldridge learned that Yagow was at the Peavey Elevator near Valley City. He called Barnes County Deputy Sheriff Larry Mundahl in Valley City and asked him to arrest Yagow, who would be in a red truck. When Deputy Mundahl and another deputy sheriff arrived at AgraBasics Company, a seed company located right next to the elevator, they saw a red truck, also arriving, with two people inside. The deputies could not see who was driving the truck. The passenger, Yagow, jumped out of the truck and ran. After a chase, the deputies caught and arrested Yagow.

There was conflicting testimony about whether Erdman arrived at AgraBasics before Yagow or whether he was the person who arrived in the truck with Yagow. Ronald Gienger, a seed plant manager for AgraBasics, testified that he saw Erdman remove his jacket from the truck shortly after the arrest. Agent Aldridge testified that two AgraBasics employees identified Erdman as the person who was at the elevator with Yagow. Yagow testified at his federal bond hearing before a United States magistrate judge that Erdman was the person who was in the truck with him when he arrived at AgraBasics that day. At Erdman's trial, however, Yagow denied that Erdman was with him and explained that he had misunderstood the question at the earlier hearing. Erdman and Gerald

Stuhr both testified that Stuhr, not Yagow, had taken Erdman to AgraBasics. Gienger stated that Erdman was already inside the AgraBasics building and followed everyone outside when they went out to see why a sheriff's deputy had just chased someone past their building.

Erdman claims that the evidence is insufficient to support the jury finding that he is guilty of harboring or concealing a fugitive. We disagree, and affirm the jury verdict.

## II.

In reviewing the sufficiency of the evidence on appeal, the court views the evidence in the light most favorable to the government, resolving evidentiary conflicts in favor of the government, and accepting all reasonable inferences drawn from the evidence that support the jury's verdict. *United States v. Mallen*, 843 F.2d 1096, 1099 (8th Cir.1988); *United States v. Newton*, 756 F.2d 53, 54 (8th Cir.1985). A conviction may be based on circumstantial as well as direct evidence. *Mallen*, 843 F.2d at 1099. The evidence need not exclude every reasonable hypothesis except guilt. *Newton*, 756 F.2d at 54. The jury's verdict must be upheld if there is an interpretation of the evidence that would allow a reasonable-minded jury to conclude guilt beyond a reasonable doubt. *United States v. Rodriguez*, 812 F.2d 414, 416 (8th Cir. 1987).

In order to prove a violation of 18 U.S.C. § 1071 (1988),[3] the government had to establish that (1) Erdman knew that a federal warrant had been issued for Yagow's arrest; (2) Erdman harbored or concealed Yagow; and (3) Erdman intended to prevent Yagow's discovery and arrest. *United States v. Udey*, 748 F.2d 1231, 1236 (8th Cir.1984). We will discuss each element in turn.

---

3. Section 1071 reads in relevant part:
    Whoever harbors or conceals any person for whose arrest a warrant or process has been issued under the provisions of any law of the United States, so as to prevent his discovery and

arrest, after notice or knowledge of the fact that a warrant or process has been issued for the apprehension of such person, shall be fined ... or imprisoned....

## A. Knowledge

Knowledge may be proven by circumstantial evidence alone; it frequently cannot be proven in any other way. *Mallen,* 843 F.2d at 1099; *Udey,* 748 F.2d at 1236. An issue, like knowledge, that turns in large part on the credibility of the witnesses is peculiarly within the province of the factfinder. *See United States v. Long,* 952 F.2d 1520, 1525 (8th Cir.1991); *United States v. Reeves,* 730 F.2d 1189, 1195 (8th Cir.1984).

■ The jury had to decide when Erdman learned that there was a warrant for Yagow's arrest. The jury's resolution of this issue was key to Erdman's conviction because any action he took that aided Yagow in avoiding arrest could be "harboring or concealing" only if Erdman knew about the warrant at the time he acted. Erdman testified at trial that he did not know about the warrant until after he was arrested in July 1990. He stated that agent Aldridge did not tell him about the warrant during their meeting on March 16, 1990. Agent Aldridge, on the other hand, testified that he always informed anyone from whom he was seeking information about Yagow's whereabouts of the warrant. He stated that he discussed the warrant with Erdman at their March meeting. He further stated that Erdman already knew about the warrant, and that Erdman told agent Aldridge that the warrant was not valid because it was not signed by a judge. Agent Aldridge explained to Erdman that the warrant was valid because it had been approved by a judge. The jury was entitled to believe agent Aldridge and not Erdman if, from their observation of the witnesses' demeanor and testimony, they thought that Erdman's account was not credible and agent Aldridge's was.

In addition, there was other evidence on the record from which the jury could infer that either Yagow [4] or someone else told Erdman about the warrant shortly after it was issued. Erdman and Yagow had been friends since 1986. Erdman painted Yagow's van shortly after Yagow arrived in Barnesville, even though he had previously described it as "a piece of junk." It would be logical to infer from this that Yagow told Erdman about the warrant. They had several mutual friends and acquaintances. Agent Aldridge testified that, after the warrant was issued, he regularly contacted Yagow's friends and relatives, informed them of the warrant and requested help in locating Yagow. In October 1989, Erdman's daughter's car was seen at Yagow's residence in Gwinner. There was testimony that Erdman visited his daughter at work regularly. Thus, the jury could infer from these facts and Erdman's actions that either mutual friends or his daughter had told Erdman about the warrant. We find that, viewing the evidence in the light most favorable to the government and accepting all reasonable inferences that support the jury's verdict, of which the government has made full use in this case, there is sufficient evidence on the record to support the jury's finding that Erdman knew about the warrant shortly after it was issued.

## B. Harboring or Concealing

■ Erdman claims that the evidence is insufficient to show that he did anything that falls within the definition of harboring or concealing. He claims that the government has only shown that he failed to disclose Yagow's location to them and that he occasionally associated with Yagow. "What is generally required to make out a violation of the statute [18 U.S.C. § 1071] is 'any physical act of providing assistance, including food, shelter, and other assistance to aid ... in avoiding detection and apprehension.'" *United States v. Silva,* 745 F.2d 840, 849 (4th Cir.1984). However, if we accept the inference that Erdman knew about the warrant for Yagow's arrest shortly after it was issued, there is

---

4. We think it is clear from the record that Yagow knew of the existence of the warrant. Among other things, he left Gwinner right after the issuance of the warrant, and he apparently did not return there during the months leading up to his arrest. His family knew about the warrant, as did many of his friends. Yagow dyed his hair from gray to brown in September 1989, and had Erdman paint his van at about the same time. His wife told agent Aldridge in December 1989 that Yagow had deserted her in the fall and she did not know where he was.

evidence from which the jury could infer that Erdman rendered actual physical assistance to Yagow in avoiding arrest.

First, shortly after Yagow arrived in Barnesville, Erdman painted Yagow's van, thereby changing its color and making it less recognizable.[5]  Second, Erdman helped Yagow find a job hauling sugar beets and also helped Yagow do the hauling.  Third, Erdman had the keys to a trailer where Yagow's van was seen several times between January and March 1990.  Although Erdman did not own the trailer at that time, he acted as caretaker for it.  Fourth, Erdman attempted more than once to cash checks drawn on Yagow's account at the Union State Bank in Fargo.  Fifth, two people testified that Erdman helped Yagow haul grain to the Peavey Elevator near Valley City.  From all of this the government contends, and we agree, that the jury could reasonably infer that Erdman provided physical assistance to Yagow in avoiding detection and apprehension by making his van harder to recognize, providing him with a place to stay, and attempting to provide financial assistance.

### C.  Intent

"Intent is an issue that turns in large part on the credibility and demeanor of witnesses, and is peculiarly within the province of the jury." *Long,* 952 F.2d at 1525; *see also United States v. Reeves,* 730 F.2d 1189, 1195 (8th Cir.1984).  We think that, based on the evidence discussed above, the jury could have reasonably concluded that Erdman's actions were intended to prevent Yagow's discovery and arrest.

### III.

In sum, we find that, viewing the evidence in the light most favorable to the government, resolving evidentiary conflicts in favor of the government, and accepting all reasonable inferences drawn from the evidence that support the jury's verdict,

there is sufficient evidence on the record to support the jury's finding of guilt.  We affirm.

---

**5.**  During their March 16, 1990, meeting, agent Aldridge asked Erdman what Yagow was driving.  Erdman replied that he didn't know.  Although there was some testimony that Yagow

may not have been driving the van at that time, we think this omission is significant, particularly on the intent issue, *infra,* Part C.