_____

No. 95-2280
_____

United States,                        *
                                      *
          Plaintiff-Appellee,         *
                                      *  Appeal from the United States
     v.                               *  District Court for the Eastern
                                      *  District of Arkansas.
Phillip Wilson Bates,                 *
                                      *
          Defendant-Appellant.        *


_____

             Submitted:  November 14, 1995

               Filed:  March 5, 1996
_____


Before McMILLIAN, FLOYD R. GIBSON, and LOKEN, Circuit Judges.

_____

FLOYD R. GIBSON, Circuit Judge.


     Phillip Bates challenges his conviction and sentence[1] for being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1) (1988).  We affirm.

**I. BACKGROUND**

     On January 1, 1994, United States Fish and Wildlife Special Agent Darwin Huggins was making routine equipment and hunting license checks on a boat ramp on the Cache River in Arkansas when a boat occupied by Phillip Bates pulled up.  The boat contained two

_____

[1]The Honorable Stephen M. Reasoner, United States District Judge for the Eastern District of Arkansas.

other individuals, Mike Harris and Deborah Hamilton, as well as hunting equipment, duck decoys, dead ducks, and two shotguns, one of which was located nearest to Bates. All three occupants were dressed in chest waders and hunting clothes.

Special Agent Huggins, who had been on the lookout for Bates, identified himself as a law enforcement officer and asked to make a routine inspection of their licenses, guns, and ducks. Special Agent Huggins asked who had killed the ducks, and Harris stated that the ducks were his. Special Agent Huggins then asked to whom the two firearms belonged. Harris stated that one of the guns belonged to him. When Special Agent Huggins then asked Bates if the second gun belonged to him, Bates admitted that it did.

Special Agent Huggins then asked to inspect their hunting permits. Bates produced an Arkansas hunting license, two duck stamps, a hunter education certificate, and a Cache River hunting permit. The reverse side of Bates's hunter education certificate bore the legend "Arkansas Outdoor Guide Services - Singles, Groups, and Families, Phillip Bates." Bates told Special Agent Huggins that he had been hunting, but that Hamilton had not because she did not have a valid license or duck stamp. Special Agent Huggins then told Bates that he needed to check their guns and asked him which one was his. Bates picked up the gun nearest him, a Sportsman 12-gauge pump Magnum shotgun, told Special Agent Huggins that it was his, and handed it to Special Agent Huggins. After inspecting the firearms, Special Agent Huggins asked to inspect their shells. In response, Bates handed over eleven rounds of 12-gauge shotgun shells from his belt and various pockets, all of which matched the firearm he had handed Special Agent Huggins. Special Agent Huggins then asked Bates to accompany him to the parking lot where he placed Bates under arrest for being a felon in possession of a firearm. At this point, Bates recanted his story and denied that he had been hunting, claiming instead that his shotgun was being used by Hamilton.

Bates was charged with being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1),[2] tried before a jury, and convicted. The district court found that Bates had two prior serious drug offenses and one prior violent felony and sentenced him to fifteen years imprisonment pursuant to 18 U.S.C. § 924(e)(1).[3]  The district court also sentenced Bates to three years supervised release and imposed a fine of $12,500. Bates challenges the constitutionality of his conviction under the Commerce Clause, the sufficiency of the evidence supporting his conviction, and alleges that he received ineffective assistance of trial counsel.  Bates also claims that his sentence violates the Fifth Amendment's guarantee of due process and prohibition against double jeopardy.  We address each issue seriatim.

## II. DISCUSSION

### A. Commerce Clause

Bates first argues that his conviction is the result of an unconstitutional application of 18 U.S.C. § 922(g)(1).  Based on the Supreme Court's recent decision in United States v. Lopez, 115 S. Ct. 1624 (1995), he contends that Congress lacks the power under the Commerce Clause to criminalize the mere possession of a firearm that has traveled in interstate commerce absent the showing of a more substantial impact on interstate commerce.  "We review federal

---

[2]18 U.S.C. § 922(g) provides that is shall be unlawful for a convicted felon "to ship or transport in interstate or foreign commerce, or possess in or affecting commerce, any firearm or ammunition; or to receive any firearm or ammunition which has been shipped or transported in interstate or foreign commerce."

[3]18 U.S.C. § 924(e)(1) provides that "a person who violates section 922(g) of this title and has three previous convictions . . . for a violent felony or a serious drug offense, or both, committed on occasions different from one another, such person shall be  fined not more than $25,000 and imprisoned not less than fifteen years . . . ."

constitutional questions de novo." United States v. Johnson, 56 F.3d 947, 953 (8th Cir. 1995).

We believe that Bates reads Lopez too broadly. In that decision, the Supreme Court held that the Gun-Free School Zones Act, 18 U.S.C. § 922(q)(1)(A) (Supp. 1993), a measure which made it a federal crime to knowingly possess a firearm in a school zone, exceeded Congress' power to regulate interstate commerce under the Commerce Clause. Lopez, 115 S. Ct. at 1626. In reaching its decision, the Court "identified three broad categories of activity that Congress may regulate under its commerce power." Id. at 1629. Those categories are: (1) the power to regulate the use of the channels of interstate commerce; (2) the power to regulate and protect the instrumentalities of interstate commerce, or persons or things in interstate commerce, even though the threat may come from intrastate activities; and (3) the power to regulate those activities having a substantial relation to interstate commerce. Id. at 1629-30. In cases challenging Congress' lawmaking power under the third category, the Court concluded that the "the proper test requires an analysis of whether the regulated activity 'substantially affects' interstate commerce." Id. at 1630.

Categorizing the Gun-Free School Zones Act under the third heading, the Court determined that the Act exceeded Congress' Commerce Clause authority because it neither regulated a commercial activity that could potentially have a substantial effect on interstate commerce nor contained the type of express jurisdictional element approved in United States v. Bass, 404 U.S. 336 (1971), "which would ensure, through case-by-case inquiry, that the firearm possession in question affects interstate commerce." Id. at 1630-31. We do not believe, however, that section 922(g)(1) suffers from the same defect. Unlike the Gun-Free School Zones Act, an individual case under section 922(g)(1) may fall under either the second or the third categories identified in Lopez, 115 S. Ct. at 1629-30. United States v. Mosby, 60 F.3d 454, 455 (8th

4

Cir. 1995), petition for cert. filed on Dec 4, 1995 (No. 95-7053). And unlike the Gun-Free School Zones Act, section 922(g) contains the same type of "express jurisdictional element which might limit its reach to a discrete set of firearm possessions that additionally have an explicit connection with or effect on interstate commerce" approved in Bass. Lopez, 115 S. Ct. at 1631.

Bates argues that the jury instructions, which required the jury to find that the shotgun possessed by him had previously traveled in interstate commerce, were insufficient to establish the required nexus to interstate commerce required by Lopez. We have already squarely rejected this argument in United States v. Shelton, 66 F.3d 991 (8th Cir. 1993) (per curiam). "To satisfy the interstate commerce element of section 922(g), it is sufficient that there exists 'the minimal nexus that the firearm[s] have been, at some time, in interstate commerce.'" Id. at 992 (quoting Scarborough v. United States, 431 U.S. 563, 575 (1977)); see also United States v. Rankin, 64 F.3d 338, 339 (8th Cir.) (per curiam) (Government's evidence that sawed off shotgun possessed by felon in Missouri was manufactured in New York satisfied section 922(g)(1)'s jurisdictional nexus), cert. denied, 116 S. Ct. 577 (1995). As such, we find the application of section 922(g)(1) to Bates's conduct eminently constitutional.

## B. Sufficiency of the Evidence

Bates next attacks the sufficiency of the evidence underlying his conviction. Specifically, he alleges that the Government failed to prove that he actually possessed the firearm in question as opposed to merely owning it. He argues alternatively that he was the victim of entrapment. "In reviewing the sufficiency of the evidence on appeal, the court views the evidence in the light most favorable to the government, resolving evidentiary conflicts in favor of the government, and accepting all reasonable inferences drawn from the evidence that support the jury's verdict." United

5

States v. Erdman, 953 F.2d 387, 389 (8th Cir.), cert. denied, 505 U.S. 1211 (1992). "The jury's verdict must be upheld if there is an interpretation of the evidence that would allow a reasonable-minded jury to conclude guilt beyond a reasonable doubt." Id.

We believe that there was sufficient evidence that Bates was in possession of the firearm in question. The dead ducks, the camouflaged netting, the decoys, the chest waders, the hunting apparel, the shotgun shells found on his person, Bates's admitted ownership of the shotgun, and his initial admission that he had in fact been duck hunting all support the jury's guilty verdict. Bates argues that the jury could have reasonably inferred from this evidence that he was merely acting as a wilderness guide, and that his initial admission that he had been hunting was no more than a misguided attempt to protect his client, Deborah Hamilton, who he claims had been hunting without a license. But this alternative was fairly presented to and rejected by the jury. "[I]t is not our function as a reviewing court to reverse based on a recognition of alternate possibilities." United States v. O'Malley, 854 F.2d 1085, 1088 (8th Cir. 1988).

Bates's entrapment defense raises a question of fact, namely "whether the government agent caused or induced the defendant to commit a crime he was not otherwise predisposed -- i.e., willing and ready -- to commit whenever a propitious opportunity arose." Id. at 1088 (quotation omitted). The jury was properly instructed on this issue and summarily rejected it as well. While its decision could have been different, it is not our role to second-guess the jury's factual determinations. Id. at 1088. Based on the strong circumstantial evidence that Bates had in fact been duck hunting with the shotgun as well as Bates's own admission, we cannot say that the jury's rejection of Bates's entrapment defense is unsupported by sufficient evidence.

## C. Due Process

Bates claims that he was denied due process at the sentencing phase because he received no formal notice in the indictment or judgment that he would be sentenced under 18 U.S.C. § 924(e)(2), which mandates a minimum fifteen-year sentence for a defendant convicted under section 922(g) who has three prior convictions for a violent felony or serious drug offense. Because both the indictment and the judgment referred to section 924(a)(2), which provides a maximum sentence of ten years imprisonment, rather than section 924(e)(1), Bates claims that he can constitutionally be sentenced to no more than the ten years provided in section 924(a)(2). We review this constitutional claim de novo. <u>Johnson</u>, 56 F.3d at 953.

References in the indictment to sentence enhancements such as section 924(e) are "mere surplusage" and "may be disregarded if the remaining allegations are sufficient to charge a crime." <u>United States v. Washington</u>, 992 F.2d 785, 787 (8th Cir.) (quotation omitted), <u>cert. denied</u>, 114 S. Ct. 356 (1993). Although surplusage, such language in the indictment "serves a valid and useful purpose in that it gives notice to the defendant from the start that the government intends to seek the enhanced sentence if the defendant is convicted." <u>Id.</u> Assuming due process requires notice to the defendant that the government intends to enhance his sentence under a specific statutory provision, we believe that Bates received adequate notice nonetheless. Two of the three convictions relied upon to enhance his sentence were proven at trial. The other was fully set out in the presentence investigation report, leaving Bates with "ample opportunity to investigate his earlier convictions and to challenge the requirements of § 924(e)(1)." <u>United States v. Adail</u>, 30 F.3d 1046, 1047 (8th Cir.) (per curiam), <u>cert. denied</u>, 115 S. Ct. 653 (1994). The absence of any prior notice could not have affected the fairness of Bates's sentencing. Because sentencing is a

separate phase of the criminal process, notice of which offenses the Government would be able to rely on in order to enhance Bates's sentence became relevant only at the sentencing stage. United States v. McMurray, 20 F.3d 831, 833-34 (8th Cir. 1994). Furthermore, any potential notice deficiency would have been harmless because Bates never disputed the applicability or the existence of his three prior felonies at any point during his sentencing.[4] Adail, 30 F.3d at 1047.

## D. Double Jeopardy

Bates next contends that the district court violated the Fifth Amendment's prohibition against double jeopardy by punishing him twice for the same offenses. Specifically, he challenges the constitutionality of using his prior felony convictions both to establish his substantive offense under section 922(g)(1) and to enhance his sentence under section 924(e)(1). We review this constitutional challenge de novo. Johnson, 56 F.3d at 953.

The Fifth Amendment's Double Jeopardy Clause protects against multiple prosecutions and punishments for the same offense. Illinois v. Vitale, 447 U.S. 410, 415 (1980). Bates, however, was neither prosecuted nor punished more than once for the same offense. It is well-settled that the use of a defendant's prior convictions to establish his status as a convicted felon for purposes of section 922(g)(1) does not constitute a second conviction and punishment for double jeopardy purposes. United States v. Phillips, 432 F.2d 973, 975 (8th Cir. 1970) ("The prior conviction was permitted to be proved only . . . for the purpose of

---

[4]In a related argument, Bates contends that he should not have been sentenced under section 924(e)(2) because the Government only proved two of the required three felonies at trial. As previously observed, however, Bates neither objected to nor disputed the existence of the third felony which was fully set forth in the presentence investigation report.

8

establishing [the defendant's] status as member of a class to which the use of interstate commerce to transport firearms has been forbidden.").

This Court has similarly rejected the idea that the use of a defendant's prior convictions to enhance his sentence subjects him to a second conviction or punishment for the same offenses. Id. (citing Davis v. Bennett, 400 F.2d 279, 282 (8th Cir. 1968), cert. denied, 395 U.S. 980 (1969)); United States v. Thomas, 895 F.2d 1198, 1201 (8th Cir. 1990) ("Habitual offender statutes do not subject a defendant to a second conviction or punishment for prior offenses. Rather, the repeat offender's prior convictions are considered to be an aggravating factor that justifies imposing a heavier sentence for his or her present offense.").

Where neither practice constitutes double punishment or prosecution individually, we see no reason why they would offend the Double Jeopardy Clause when used in conjunction. As the Fifth Circuit concluded in United States v. Wallace, 889 F.2d 580, 584 (5th Cir. 1989), cert. denied, 497 U.S. 1006 (1990), "Consideration of the same felony to convict under section 922(g) and to enhance punishment under section 924(e)(1) is neither a double prosecution nor a double punishment."

### E. Ineffective Assistance of Counsel

Bates alleges that he received ineffective assistance of counsel at trial because his attorney failed to object to certain testimony. Such claims are not generally cognizable on direct appeal unless the district court has developed a record on the ineffectiveness issue. United States v. Jennings, 12 F.3d 836, 840 (8th Cir. 1994). Because no such record is available to us, we decline to address this claim.

## III. CONCLUSION

We are not unmindful of the apparent absurdity in sentencing an individual to fifteen years imprisonment for the equivalent of duck hunting. We are equally aware, however, that Congress has tied our hands and removed a much-needed measure of judicial discretion through its enactment of the fifteen year mandatory minimum provision of § 924(e)(1) of the Armed Career Criminal Act. For the aforementioned reasons, we affirm Bates's conviction and sentence.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.

10