United States Court of Appeals
**FOR THE EIGHTH CIRCUIT**

No. 96-2976

| | |
|---|---|
| United States of America, | * |
| | * |
| Appellee, | * |
| | * Appeal from the United States |
| v. | * District Court for the |
| | * Southern District of Iowa. |
| Parmoto Richard Purvis, | * |
| | * |
| Appellant. | * |

Submitted: March 12, 1997

Filed: May 29, 1997

Before FAGG and HEANEY, Circuit Judges, and NANGLE,[1] District Judge.

HEANEY, Circuit Judge.

Parmoto Purvis was tried before a jury and convicted in the Southern District of Iowa of numerous drug offenses stemming from his leadership role in the distribution of large amounts of cocaine, cocaine base, and methamphetamine. Specifically, the jury found that Purvis had engaged in a continuing criminal enterprise ("CCE") from

---

[1]The Honorable John F. Nangle, United States District Judge for the Eastern District of Missouri, sitting by designation.

April 1, 1994 through August 16, 1995 in violation of 21 U.S.C. §§ 848(a), (c) (1994); conspired to distribute controlled substances during that same period in violation of 21 U.S.C. § 846 (1994); distributed cocaine base in violation of 21 U.S.C. § 841(a)(1) (1994); and on at least four occasions carried a firearm during and in furtherance of a drug-trafficking offense in violation of 18 U.S.C. § 924(c)(1) (1994). The court sentenced Purvis to a prison sentence of life plus forty-five years.[2] On appeal, Purvis challenges the sufficiency of the evidence to support three of his convictions under section 924(c)(1) and the court's computation of the drug quantities for sentencing purposes. We affirm the convictions and sentence.

## I.

In reviewing the sufficiency of the evidence, we must consider the evidence in the light most favorable to the jury verdict and resolve all evidentiary conflicts in favor of the government. United States v. Bates, 77 F.3d 1101, 1104-05 (8th Cir. 1996). We uphold the jury verdict if there is an interpretation of the evidence

---

[2]The court imposed a life sentence on the CCE conviction, a forty-year, concurrent sentence on Purvis's two distribution convictions, a five-year consecutive sentence for the first conviction under section 924(c)(1), and two consecutive twenty-year sentences for the second and third convictions under section 924(c)(1). To avoid double jeopardy, the court imposed no additional sentence on the conspiracy conviction which related to the same facts as the CCE conviction. Similarly, the court did not impose a sentence as to one section 924(c)(1) conviction because both it and a different section 924(c)(1) conviction for which the court imposed the statutorily-mandated sentence were predicated on the same drug-trafficking offense.

that would allow a reasonable jury to find the defendant guilty beyond a reasonable doubt.  Id.

Purvis argues that the evidence is insufficient to convict him on three of the four firearm charges.  We disagree.  The evidence at trial, consisting primarily of testimony from other members of the conspiracy, fairly established the following facts.  Purvis

3

played on the poverty, homelessness, and general disfranchisement of numerous people to establish himself as the leader of an organization that, among other activities, distributed large quantities of cocaine, cocaine base, and methamphetamine. Purvis's home, where many of the co-conspirators stayed, served as the center of operations. In addition to large amounts of drugs and cash stored in the house and garage, Purvis kept an extensive arsenal of firearms at his home. The guns were kept loaded and readily accessible and were used routinely to protect the drugs, cash, and stolen property that flowed through the house. Purvis assigned certain persons to act as security forces, guarding the single entrance to the house and stationing themselves in windows to keep watch over the area outside the house. He also set up a security camera that enabled persons inside the house to monitor what was happening outside.

In order to sustain the convictions for "carrying" a firearm in violation of section 924(c)(1), the government must prove that Purvis "bore the firearm on or about his person during and in relation to a drug trafficking offense." United States v. White, 81 F.3d 80, 83 (8th

Cir. 1996).[3]    In addition to general testimony that Purvis instructed

---

[3] We note that each of the firearm charges was submitted to the jury under only the "carry" prong of section 924(c)(1), under the theory that Purvis either carried or aided and abetted in the carrying of a firearm during the commission of a drug-trafficking offense.  In his brief, Purvis relies heavily on Bailey v. United States, 116 S. Ct. 501 (1995), which clarifies the meaning of the  "use" prong of section 924(c)(1).  Although Bailey provides some guidance in this case insofar as it recognizes the common-sense limits on a key term in the statute, our obligation here is to decide whether Purvis can stand convicted of carrying firearms, the only question presented to the jury.  Thus, if the evidence were insufficient to support the "carry" convictions, we would have to reverse the convictions regardless of whether the same evidence could have supported convictions under the "use" prong of the statute.  Cf. United States v. Miner, 108 F.3d 967, 969 (8th Cir. 1997) (upholding section 924(c)(1) conviction despite flawed instruction under "use" prong where jury  instructed on both "use" and "carry" prongs and under specific facts it was "inescapably clear" that properly-instructed jury would have convicted defendant of carrying firearm).

various people under him to regularly carry guns to protect the criminal operation, there is more than sufficient evidence that Purvis carried a firearm on the specific occasions to which his convictions relate. Further, contrary to Purvis's assertions, there is also ample evidence to connect the carrying of the guns to his specific drug-trafficking crimes.

Purvis's first firearm conviction was predicated on events which took place on a night in early 1994. Purvis and several other persons were in the middle of a drug sale inside the house when they were interrupted by a loud commotion taking place outside. Several men, at least one of whom was armed with a gun, were threatening a woman who was connected to Purvis either as one of his drug customers or as one of his distributors. The men were upset because the woman had "ripped them off." Purvis testified that he picked up his gun, a loaded, 9mm revolver, which was within ready reach during the drug transaction. Purvis put the gun in the back of his pants and proceeded outside. One of Purvis's associates, carrying a loaded shotgun that belonged to Purvis, provided Purvis with backup. Purvis was able to diffuse the situation by paying the men a small sum of money. Purvis then went back inside, still armed, and completed the drug transaction. The jury obviously disbelieved Purvis's claim that the altercation outside and the associated display of weapons had no relationship to drug-trafficking activity. We have no trouble upholding the jury's finding that Purvis carried a firearm that night during and in furtherance of a drug-trafficking crime.

Purvis was also found guilty of carrying a firearm on a night soon thereafter when he sold cocaine base to an

undercover federal agent.  Purvis's girlfriend, also actively engaged in the drug operations, testified that both she and Purvis had loaded firearms readily available during that particular transaction.  According to his girlfriend, Purvis had the same loaded 9mm revolver available on the desk at which the drug deal took place.  His girlfriend, following Purvis's instruction to have ready access to a gun at all times for "protection," observed the transaction while keeping her gun, a loaded .380 pistol, "within a hand's reach."  Again, it was certainly reasonable for the jury to

conclude that Purvis either carried or aided and abetted in the carrying of a firearm in connection with the sale of a controlled substance on that occasion.

The final firearm conviction Purvis challenges is predicated on the overarching drug conspiracy and is based on weapons that were seized by state police during a search of Purvis's garage during the course of the conspiracy and in the midst of this federal investigation. There is detailed trial testimony from his co-conspirators stating that firearms were an essential part of the criminal activity led by Purvis and connecting the weapons seized to the drug conspiracy. Purvis argues that because no drugs were seized during the search, there is nothing to link the weapons to drug trafficking; he then goes on to assert that even if the police __had__ discovered drugs in the garage, the mere storage of weapons in the vicinity of drugs is not enough to establish a firearm violation under section 924(c)(1). While Purvis's arguments have some merit in the abstract, he ignores the essential fact that the weapons seized do not constitute the entire evidentiary basis for the charge. Rather, the recovered weapons corroborate the extensive testimony linking Purvis to the firearms offense. After fully reviewing that testimony in light of the weapons seized by police and identified by co-conspirators, we affirm Purvis's conviction for carrying a firearm in the course of a drug conspiracy.[4]

_____

[4]Purvis claims error with the court's admission of evidence that he violently attacked one of his co-conspirators. Purvis argues that the testimony constitutes impermissible evidence of prior bad acts and should have been excluded under Rule 404(b) of the Federal Rules of Evidence. His argument fails because the proof offered

Purvis argues that the district court erred in calculating the drug quantity as part of determining Purvis's base-offense level for sentencing. A court's drug-quantity determination is a factual finding that we review under the clearly erroneous standard. United States v. Bieri, 21 F.3d 811, 817 (8th Cir. 1994). Determining the drug quantities involved in this case is potentially challenging for two reasons. First, in contrast to the large scale of the operation, the government's investigation recovered only a very small amount of drugs as a result of its investigation. Thus, as is sometimes the case, the court had to approximate the drug quantities involved based on witnesses' testimony rather than rely on the actual amounts of recovered substances. See, e.g., United States v. Logan, 54 F.3d 452, 455 (8th Cir. 1995) (when the amount of drugs seized does not reflect the scale of the offense, the district court may approximate the quantity). Second, the probation office's presentence report relied in part on information provided by confidential informants whose testimony was not part of the trial record. To avoid unfairness in the calculation from the latter, however, the court specifically stated:

---

by the government formed the basis of a substantive count in the indictment against him. The indictment charged that Purvis carried a firearm in violation of section 924(c)(1) when he shot and threatened to kill a co-conspirator whom Purvis believed had stolen drug money and personal property related to the drug operation. Because the evidence constituted direct proof in support of Purvis's fourth (and unchallenged) firearm conviction, there can be no question as to its relevance and the district court did not err in permitting the government to introduce evidence of the attack.

I'm not taking into account amounts based strictly on information related in the presentence report concerning confidential informants' materials, but I am relying on the trial testimony. The trial testimony was obviously heavily challenged by effective cross-examination by defense counsel, but nevertheless, the jury found credible the testimony of numerous co-conspirators who testified against Mr. Purvis and found Mr. Purvis's explanation and testimony not believable.

I find that the credible evidence, based on witnesses called by the government at trial, supports the presentence report findings that very substantial amounts of controlled substance are attributable to Mr. Purvis as the leader of an organization that was distributing cocaine, crack cocaine, and methamphetamine.

(Sentencing tr. at 16:7-17:1.) The court then specifically found Purvis responsible for approximately ten kilograms of each of the three substances, slightly less than the amounts calculated in the presentence report. After careful review, we are satisfied that the district court based its calculation on proper evidence and that its determination is amply supported by the trial testimony.

## III.

In short, Purvis's convictions and sentence are affirmed.


A true copy.

Attest.

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.

11