# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 07-1208

_____

United States of America,   *
            *
    Appellee,    *
            * Appeal from the United States
   v.       * District Court for the
            * Eastern District of Missouri.
Terry Jean Hayes, also known as *
Terry Jean Johnson,    *
            *
    Appellant.   *

_____

Submitted: November 13, 2007
Filed: March 14, 2008

_____

Before MELLOY, BEAM, and SHEPHERD, Circuit Judges.

_____

SHEPHERD, Circuit Judge.

Terry Jean Hayes appeals her conviction for concealing a person from arrest in violation of 18 U.S.C. § 1071 and the resulting sentence of 33 months of imprisonment imposed by the district court.[1] We affirm both the conviction and the sentence.

_____

[1]The Honorable Stephen N. Limbaugh, United States District Judge for the Eastern District of Missouri.

Consistent with our standard of review, the following facts are described in the light most favorable to the verdict. United States v. Honarvar, 477 F.3d 999, 1000 (8th Cir. 2007). On September 21, 2005, Drug Enforcement Administration (DEA) agents, assisted by state officers, sought to locate and arrest Michael Lee Hayes (Michael) for multiple federal felony drug offenses, including conspiracy to manufacture methamphetamine. With a federal arrest warrant, DEA agents first sought Michael at an apartment in Fenton, Missouri. Although DEA agents failed to locate Michael at the apartment, they did learn that Michael might be at a house on Forder Road in St. Louis County. The Forder Road house, which was home to Michael's father Gary Hayes (Gary) and stepmother Terry Jean Hayes (Hayes), was included in the arrest packet as a potential address for Michael.

Between 6:45 and 7:00 a.m., DEA agents arrived at the Forder Road address. DEA Special Agent Harold Watson directed others to secure the perimeter around the house to prevent any escape, and then he knocked on the front door of the residence and loudly announced "DEA, police" and "please come to the door." Simultaneously, other officers were knocking on the other doors of the house. After repeated attempts, Agent Watson was unable to get anyone to answer the door. Several minutes later, Agent Watson looked through a gap in the blinds of the window adjacent to the front door. He saw two persons, one whom he believed to be a male and the other a female. The individuals were "walking stealthily" inside the residence and in the direction of what was later determined to be the basement entrance. Agent Watson reported the movement he observed inside the residence to the other officers. He then resumed knocking and yelling. Again receiving no response, Agent Watson telephoned the residence, but the call went unanswered. Agent Watson located a work telephone number for Gary, the homeowner and Michael's father, and called that number. Gary answered the call and briefly spoke to Agent Watson. Fifteen minutes later, Gary called Agent Watson back. At the conclusion of the second call, Hayes, Michael's

stepmother, opened the front door of the residence and emerged from the house with a telephone to her ear. By then, an hour and a half had elapsed since agents first arrived at the Forder Road residence.

Agent Watson identified himself as a DEA agent, informed Hayes that he had a federal arrest warrant for Michael, and showed Hayes the arrest warrant. Hayes responded that Michael was not in the residence because he had left earlier in the day with his girlfriend. When Agent Watson told Hayes that he had seen two persons moving through the house, Hayes again denied that Michael was inside the home. Agent Watson told Hayes that agents were going to search the house for Michael and that he wanted her to tell him where Michael was located so no one would get hurt. Hayes did not respond. In the ensuing search, agents found Michael hiding in the basement of the residence, and he was arrested.

Eight months after Michael's arrest, Hayes was indicted for concealing Michael from arrest, in violation of 18 U.S.C. § 1071. At trial, following the government's case-in-chief and again at the conclusion of all the evidence, Hayes moved for acquittal arguing that, at best, the government showed that Hayes had merely lied to authorities concerning Michael's whereabouts and thus the evidence was insufficient to convict her under section 1071. The district court denied both motions. Hayes also objected to a proposed jury instruction, arguing that the jury should be instructed that to convict her of concealing a person from arrest the jury must find that she committed a physical act of concealment. The district court overruled her objection and refused to give the requested instruction. Hayes also submitted an instruction that false statements, standing alone, were insufficient to convict her under the statute. The district court also refused that instruction. The jury returned a guilty verdict on the one count indictment.

At sentencing, the district court applied section 2X3.1(a) (accessory after the fact) of the Sentencing Guidelines, which sets the offender's base offense level "6

levels lower than the offense level for the underlying offense" with an upper limit of 20 levels "[i]n any case in which the conduct is limited to harboring a fugitive [with certain exceptions]." See United States Sentencing Commission, Guidelines Manual, § 2x3.1(a)(1), (a)(3)(B). Because Michael pled guilty to conspiring to distribute between 1.5 and 5 kilograms of methamphetamine, his base offense level was 34. See USSG § 2D1.1(c)(3). Thus, Hayes's base offense level was 20, the maximum allowed under section 2X3.1(a)(3)(B). Because Hayes had no prior criminal history, her Sentencing Guidelines range was 33 to 41 months. She objected to the calculation of the base offense level, arguing that she neither knew nor should have known of the amount of drugs Michael was accused of possessing with intent to distribute. Additionally, she argued that the Sentencing Guidelines overstated the seriousness of her offense and thus imposition of a sentence within the Guidelines range would not be appropriate under 18 U.S.C. § 3553(a). The district court rejected Hayes's arguments and sentenced her to 33 months of imprisonment and 2 years of supervised release. This appeal follows.

## II.

Hayes argues that (1) the government failed to present sufficient evidence that she concealed Michael after learning about the federal arrest warrant, (2) the district court abused its discretion in refusing her requested jury instructions, and (3) the district court imposed an unreasonable sentence.

## A.

We review challenges to the sufficiency of the evidence presented at trial de novo and reverse only if no reasonable jury could find guilt beyond a reasonable doubt. In conducting this review, we view the evidence in the light most favorable to the verdict, giving the verdict the benefit of all reasonable inferences. Honarvar, 477 F.3d at 1000.

Hayes contends that the government failed to present evidence that Hayes engaged in a physical act of concealment after learning from agents that they possessed a federal arrest warrant for Michael.  A violation of section 1071 occurs when someone:

> harbors or conceals any person for whose arrest a warrant or process has been issued under the provisions of any law of the United States, so as to prevent his discovery and arrest, after notice or knowledge of the fact that a warrant or process has been issued for the apprehension of such person . . . .

18 U.S.C. § 1071.

Hayes maintains she learned about the arrest warrant for Michael when Agent Watson showed her the warrant, and, after that time, she did nothing other than lie to the agents about Michael's location.  Lying, she claims, does not constitute concealment under section 1071 because it is not a physical act, thus the evidence presented at trial was insufficient to support her conviction.  In support of her contention, Hayes relies on the Eighth Circuit cases of United States v. Zerba, 21 F.3d 250 (8th Cir. 1994) and United States v. Erdman, 953 F.2d 387 (8th Cir. 1992).

We addressed the application of section 1071 in United States v. Hash, 688 F.2d 49 (8th Cir. 1982) (per curiam), stating that the government had the burden of proving three essential elements:  (1) the defendant had specific knowledge that a federal warrant had been issued for the person's arrest, (2) the defendant harbored or concealed the person for whom the arrest warrant had been issued, and (3) the defendant intended to prevent the person's discovery and arrest.  Id. at 52.  In Hash, federal authorities proceeded to the defendant's residence in search of her then-boyfriend for whom officers had a federal arrest warrant.  Id. at 50.  Officers showed Hash a copy of the warrant and asked her if she knew the location of her boyfriend.  Id.  She responded that she did not and then denied officers entrance into the

residence. Id. Minutes later, the boyfriend appeared at the door of the residence and surrendered peacefully to officers. Id. Hash argued that she did not conceal her boyfriend long enough to have violated the statute. Id. at 52. In affirming her conviction, this court held that there is "no minimum duration of concealment" necessary to constitute a violation of section 1071 and that Hash's "denial that [the fugitive] was in her home and her refusal to admit the officers were active measures of concealment . . . ." Id.

In United States v. Udey, 748 F.2d 1231 (8th Cir. 1984), co-defendant Arthur Russell argued that the government's evidence was insufficient "to establish an act by him of concealing [the fugitive]." Id. at 1235. There, Russell, who had knowledge of the arrest warrant, "allowed [the fugitive] to stay in his home thereby concealing [the fugitive] from the law enforcement agencies that sought [the fugitive's] arrest" and "instructed his daughter . . . to remain silent about the fugitive's presence and identity." Id. at 1236. We held that those facts were sufficient to support Russell's conviction. Id.

In Erdman, we quoted the Fourth Circuit in stating, "'What is generally required to make out a violation of the statute [18 U.S.C. § 1071] is "any physical act of providing assistance, including food, shelter, and other assistance to aid . . . in avoiding detection and apprehension."'" Erdman, 953 F.2d at 390 (quoting United States v. Silva, 745 F.2d 840, 849 (4th Cir. 1984) (quoting United States v. Kutas, 542 F.2d 527, 528 (9th Cir. 1976))). We further explained "that the jury could reasonably infer that [the defendant] provided physical assistance [to the fugitive] in avoiding detection and apprehension by . . . [inter alia] providing him with a place to stay . . . ." Id. at 391. In Zerba, this court stated that to prove concealment, "the government had to establish that . . . [the defendant] engaged in physical acts that aided [the fugitive] in avoiding detection and apprehension . . . ." 21 F.3d at 252 (citing Udey, 748 F.2d at 1235-36).

Hayes argues that after she learned of the arrest warrant, she merely lied to the agents about Michael's location and thus did not physically act to conceal him from the agents. She asks this court to hold that merely lying to authorities does not constitute a physical action and therefore cannot, alone, violate the statute. However, Hayes's actions consisted of more than simply lying to the agents. The jury could reasonably conclude that agents observed Hayes and Michael "walking stealthily" towards the basement door after they heard the agents knocking on the front door and that she delayed opening the door for over an hour and a half after agents first arrived. After Hayes opened the door and was shown the arrest warrant, Hayes not only lied to the agents concerning her knowledge of Michael's whereabouts, she continued to provide Michael a place, or shelter, in which he could attempt to avoid apprehension. As such, a reasonable jury could find that she harbored or concealed Michael in violation of section 1071.

B.

In a related issue, Hayes argues that the district court erred in refusing to instruct the jury that it had to find Hayes committed a "physical action" to convict her of section 1071 and in refusing Hayes's proposed instruction that false statements alone cannot constitute the crime of concealment from arrest. We review a district court's rejection of defendant's proposed instruction for abuse of discretion, see United States v. Gladney, 474 F.3d 1027, 1032 (8th Cir. 2007), and we recognize that district courts are entitled to "broad discretion in formulating the jury instructions," United States v. Johnson, 278 F.3d 749, 751 (8th Cir. 2002). "We review the instructions given as a whole and affirm if they fairly and adequately submitted the issues to the jury." United States v. Meads, 479 F.3d 598, 601 (8th Cir.), cert. denied, 128 S. Ct. 164 (2007) (quoting Johnson, 278 F.3d at 752).

Hayes proposed a jury instruction stating that essential elements of the crime included the requirement that she "harbored and concealed Michael Lee Hayes by

means of a physical act" and "intended to prevent the discovery or arrest of Michael Lee Hayes by committing the physical act." Hayes also sought an instruction that "[f]alse statements made by the defendant to law enforcement officers, if any, cannot alone constitute the crime of Concealing a Person from Arrest." The district court denied these proposed instructions, instead instructing the jury as follows:

> The crime of concealing a person from arrest as charged in the indictment, has five essential elements, which are:
>    One, a federal warrant had been issued for the arrest of Michael Lee Hayes; and
>    Two, that the warrant had been issued on a charge of a felony; and
>    Three, the defendant had specific knowledge that a federal warrant had been issued; and
>    Four, with that knowledge the defendant harbored or concealed Michael Lee Hayes; and
>    Five, that by such actions the defendant intended to prevent the discovery or arrest of Michael Lee Hayes.

(Appellant's Add. at A-3.)

"A defendant is not entitled to a particularly worded instruction where the instructions given adequately and correctly cover the substance of the requested instruction." Johnson, 278 F.3d at 752 (quoting United States v. Wright, 246 F.3d 1123, 1128 (8th Cir. 2001)). The instruction given in this case, which includes the phrase "by such actions," adequately covers the substance of Hayes's requested instruction. As for Hayes's other request, that the court instruct the jury that false statements alone could not constitute a violation of the statute, the district court properly denied that instruction because the evidence presented demonstrated that Hayes did more than simply lie to the agents. She actively concealed Michael by providing him shelter from the authorities. Meads, 479 F.3d at 601 (holding that where "the evidence at trial [does] not support the instruction . . . the district court's rejection of the instruction [is] not an abuse of discretion"). Accordingly, we find that the district court did not abuse its discretion in denying Hayes's proposed instructions.

-8-

Finally, Hayes challenges the reasonableness of her 33-month sentence. She acknowledges that a challenge of her Sentencing Guidelines calculation would be futile under this court's decision in United States v. Booker, 186 F.3d 1004 (8th Cir. 1999) (finding that district court correctly established defendant's misprision conviction's base offense level under Guidelines section 2X4.1 using the base offense level of the underlying offense, even though the defendant neither knew or should have known of the drug quantity relevant to the underlying offense), thus Hayes limits her argument to the reasonableness of her sentence under 18 U.S.C. § 3553(a). Specifically, Hayes contends that her sentence: (1) greatly overstates the seriousness of her offense, see 18 U.S.C. § 3553(a)(2)(A) (stating that a sentencing court must consider "the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense"), and (2) imposes an unwarranted sentencing disparity as compared to what others who are found guilty under section 1071 would likely receive, see 18 U.S.C. § 3553(a)(6) (proving that a sentencing court should also consider "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct").

When we review the imposition of sentences, whether inside or outside the Guidelines range, we apply "a deferential abuse-of-discretion standard." Gall v. United States, 128 S. Ct. 586, 591 (2007). Hayes's 33-month sentence is within a properly calculated Guidelines range, thus we presume it to be reasonable. Id. at 597; Rita v. United States, 127 S. Ct. 2456, 2462 (2007). At sentencing, the district court extensively reviewed the factual basis of Hayes's conviction and noted consideration of Hayes's sentencing memorandum and presentation of argument before the court. The court declared that Hayes's obstruction of the agents' performance of their duties was "a serious offense" and recognized the need "to promote respect for the law,"

concluding "[q]uite frankly, considering everything that I know about this case, if there were no sentencing guidelines I would feel that the range of punishment set out by the guidelines is a reasonable range of punishment and in all probability I would use that range . . . ." We find no procedural error, and we cannot say that the district court abused its discretion in imposing the sentence here. Gall, 128 S. Ct. at 597.

## III.

Accordingly, we affirm Hayes's conviction and sentence.

_____