# United States Court of Appeals
## For the Eighth Circuit
_____

No. 22-3240
_____

United States of America

*Plaintiff - Appellee*

v.

Wayne Riley

*Defendant - Appellant*
_____

Appeal from United States District Court
for the Eastern District of Arkansas - Northern
_____

Submitted: April 10, 2023
Filed: August 3, 2023
[Unpublished]
_____

Before LOKEN, SHEPHERD, and KELLY, Circuit Judges.
_____

PER CURIAM.

Wayne Riley pleaded guilty to possession of an unregistered firearm, in violation of 26 U.S.C. §§ 5841, 5861(d), and 5871. The district court[1] sentenced him to 120 months' imprisonment, applying a 4-level enhancement under United

_____

[1]The Honorable Lee P. Rudofsky, United States District Judge for the Eastern District of Arkansas.

States Sentencing Guidelines § 2K2.1(b)(5) (2021) for trafficking firearms. Riley appeals the application of the enhancement and his sentence. We affirm.

I.

In September 2020, law enforcement conducted a search of the home of Darius Balentine and uncovered two "destructive devices," each of which appeared to be "some type of . . . bomb." An examination of the devices showed they contained a pyrotechnic fuse, a considerable amount of smokeless powder, and nails. Balentine was arrested and interviewed by Special Agent Timothy Boles of the Bureau of Alcohol, Tobacco, Firearms and Explosives. Balentine told Special Agent Boles that a man, Wayne Riley, had "dropped . . . off [the devices] at his house," and that "another individual was supposed to come get them" from Balentine later. Balentine's phone records showed Facebook messages between himself and Riley, where Riley offered to sell Balentine "pipe bombs," priced at one bomb for $100 or ten bombs for $800. Balentine replied, agreeing to purchase some of the bombs and telling Riley that he "ha[d] got some people trying to buy some."

On July 6, 2021, a grand jury indicted Riley on one count of possession of an unregistered firearm, in violation of 26 U.S.C. §§ 5841, 5861(d), and 5871.[2] Riley later pleaded guilty, without a plea agreement, to this single count. Relevant here, the Probation Office prepared a presentence investigation report (PSR) that recommended that Riley receive a four-level enhancement under Guidelines § 2K2.1(b)(5) because he "engaged in the trafficking of firearms." Riley objected.

At sentencing, the government introduced evidence of the messages between Balentine and Riley, and Special Agent Boles testified. The district court overruled Riley's objection, resulting in an advisory Guidelines range of 77 to 96 months' imprisonment. Applying the 18 U.S.C. § 3553(a) sentencing factors, the district

_____

[2]Balentine was charged as a co-defendant.

court explained that an upward variance was warranted because "[p]ipe bombs destroy lives, they destroy people, [and] they harm." The court also noted Riley's "very concerning" criminal history, which included offenses Riley committed while awaiting sentencing on the instant offense, and it stated that Riley's behavior showed "not only a willingness to violate the law, but . . . a continuing lack of respect for the law." The district court thereafter imposed a sentence of 120 months' imprisonment, to be followed by 3 years of supervised release. Riley now appeals.

## II.

### A.

We turn first to the district court's imposition of the trafficking-in-firearms enhancement. Under Guidelines § 2K2.1(b)(5), a defendant's base offense level increases by four if he or she "engaged in the trafficking of firearms." But the enhancement applies only if the defendant (1) "transported, transferred, or otherwise disposed of two or more firearms to another individual" and (2) "knew or had reason to believe that such conduct would result in the transport [or] transfer" of the firearm to an individual (a) "whose possession or receipt of the firearm would be unlawful" or (b) "who intended to use or dispose of the firearm unlawfully." USSG § 2K2.1, comment. (n.13(A)).

The district court determined that Riley transported or transferred firearms—the two pipe bombs—to Balentine, and that Riley knew or had reason to believe that Balentine, or "the people that Mr. Balentine was ultimately going to sell" to, were individuals whose possession or receipt of the firearm would be unlawful. See id. § 2K2.1, comment. (n.13(B)) (defining "individual" whose possession would be "unlawful" as one who has a conviction "for a crime of violence, a controlled substance offense, or a misdemeanor crime of domestic violence" or who "was under a criminal justice sentence"). On appeal, Riley argues that there was "no evidence whatsoever" that he knew or had reason to believe that Balentine or any of Balentine's "alleged potential buyers" "fell into the narrow category of prohibited

-3-

possessors." The government does not seriously counter this argument. Instead, it contends that given the nature of the bombs and the circumstances of Riley's transfer, Riley knew or had reason to believe that the sale of these destructive devices "would result in the transport, transfer, or disposal of a firearm to an individual . . . who intended to use or dispose of the firearm unlawfully." Id. § 2K2.1, comment. (n.13(A)(ii)(II)). We agree.

Riley "transferred . . . two or more [destructive devices]" to Balentine. Id. § 2K2.1, comment. (n.13(A)(i)). And based on the evidence presented at sentencing, Riley also knew, or had reason to believe, that Balentine "intended to . . . dispose of the [destructive devices] unlawfully." Id. § 2K2.1, comment. (n.13(A)(ii)(II)); see United States v. Asante, 782 F.3d 639, 644 (11th Cir. 2015) (explaining that when determining whether a defendant knew his conduct would result in the transfer of firearms to someone that would trigger the trafficking enhancement, courts look "to the circumstances known to the defendant"). Balentine expressly communicated to Riley his subsequent plans for the bombs: he was going to resell them. And transferring unregistered firearms, like the destructive devices Balentine intended to sell, is "unlawful." See 26 U.S.C. § 5861(e). The evidence therefore supports a finding that Riley knew or had reason to believe that Balentine intended to dispose of the pipe bombs unlawfully. See, e.g., United States v. McKenzie, 33 F.4th 343, 351 (6th Cir. 2022) (reasoning that a court may rely on "a buyer's 'red flag' statements" that are communicated to the defendant to conclude that "the defendant had a reason to believe that the buyer . . . intended to use [the firearms] unlawfully"). The district court did not clearly err in applying the enhancement.

B.

Riley also challenges the substantive reasonableness of his sentence. We review the substantive reasonableness of sentences under "a deferential abuse-of-discretion standard." United States v. Feemster, 572 F.3d 455, 461 (8th Cir. 2009) (en banc) (quoting United States v. Hayes, 518 F.3d 989, 995 (8th Cir. 2008)). "A district court abuses its discretion when it (1) fails to consider a relevant factor that

should have received significant weight; (2) gives significant weight to an improper or irrelevant factor; or (3) considers only the appropriate factors but in weighing those factors commits a clear error of judgment." Id. (quotations and citation omitted).

Riley argues that the district court gave "too much weight" to "factors already taken into account in the calculation of the advisory [G]uidelines range, such as the nature of the offense and Mr. Riley's criminal history." The district court described Riley's offense as "appalling" and noted that "selling pipe bombs" was "among the most dangerous offenses one can commit." The court explained that this, coupled with Riley's criminal record, warranted more than "a normal [G]uideline sentence." The court concluded that a sentence of 120 months was necessary "to specifically deter" Riley and "to protect the public." A district court may "assign relatively greater weight to the nature and circumstances of the offense than to the mitigating personal characteristics of the defendant," United States v. Wisecarver, 644 F.3d 764, 774 (8th Cir. 2011), and the record demonstrates that the court properly considered the § 3553(a) factors. See United States v. Thorne, 896 F.3d 861, 865 (8th Cir. 2018) (per curiam) (explaining that factors taken into account in calculating the advisory Guidelines range can form the basis of an upward variance). We discern no abuse of discretion.

III.

The judgment of the district court is affirmed.

_____