UNITED STATES of America, Appellant,

v.

Adams B. ROBBINS, Sr., Appellee.

No. 93–2027.

United States Court of Appeals,
Eighth Circuit.

Submitted Nov. 10, 1993.

Decided April 12, 1994.

Rehearing Denied May 11, 1994.

298

E. Eugene Harrison, Asst. U.S. Atty., Kansas City, MO, argued, for appellant.

Jonathan A. Bortnick, Kansas City, MO, argued, for appellee.

Before McMILLIAN, Circuit Judge, HENLEY, Senior Circuit Judge, and MAGILL, Circuit Judge.

MAGILL, Circuit Judge.

The United States (government) appeals the district court's order granting Adams Robbins' (Robbins) motion for a judgment of acquittal and, in the alternative, his motion for a new trial. The government argues that the district court erred in granting Robbins' motion for a judgment of acquittal because there was sufficient evidence to support his drug conspiracy conviction. It also argues that the court erred in alternatively granting Robbins' motion for a new trial because evidence officers seized from his business was properly admitted at trial. We reverse the grant of Robbins' motion for a judgment of acquittal and affirm the grant of his motion for a new trial.

## I. BACKGROUND

Robbins was among seven people that a federal grand jury indicted for conspiracy to possess with intent to distribute cocaine. Four of the conspirators pleaded guilty and agreed to testify against the others at trial.

The three main witnesses were Dorrel Ashley, George Walters, and David McLean, natives of Jamaica who ran a crack cocaine distribution operation in Junction City, Kansas, from around December 1989 until July 1991. Robbins owns a taxicab business that serves the Junction City area.

Before trial, Robbins filed a motion to suppress evidence officers seized from his cab business. The district court denied the motion, finding that the evidence had been seized under a valid search warrant. The evidence consisted of a rock of crack cocaine, a prescription pill bottle bearing Robbins' name, and two notes from Robbins' wallet listing the names of two members of the conspiracy, a telephone number, and rows of numbers. At trial, Robbins renewed his objections to the evidence; the district court overruled the objections and admitted the evidence. The government used the notes from Robbins' wallet in its case-in-chief as evidence of his participation in the conspiracy. It offered the crack and pill bottle for the limited purpose of impeaching statements Robbins made on the stand.

After a twelve-day trial of three defendants, the jury found Robbins guilty of being a member of the conspiracy. Robbins filed post-trial motions for a judgment of acquittal and a new trial. The district court granted the motion for a judgment of acquittal, finding that there was insufficient evidence to support the verdict against Robbins. In the alternative, the court granted the motion for a new trial on the ground that its decision at trial to admit the crack, pill bottle, and notes was erroneous because officers obtained the evidence in violation of the Fourth Amendment. The government timely appeals.

## II. DISCUSSION

The government argues that the district court erroneously granted both motions. We address these arguments in turn.

### A. Motion for a Judgment of Acquittal

In considering a motion for a judgment of acquittal, a district court has " 'very limited latitude.' " *United States v. Pardue*, 983 F.2d 843, 847 (8th Cir.) (quoting *United*

*States v. Jewell,* 893 F.2d 193, 194 (8th Cir. 1990)), *cert. denied,* —— U.S. ——, 113 S.Ct. 3043, 125 L.Ed.2d 728 (1993). The court cannot weigh the evidence or assess the credibility of the witnesses. *Id.* Rather, it must determine whether " 'the evidence, viewed in the light most favorable to the government, is such that a reasonably minded jury *must* have a reasonable doubt as to the existence of any essential elements of the crime charged.' " *Id.* (quoting *United States v. Mundt,* 846 F.2d 1157, 1158 (8th Cir.1988)). On appeal, we apply the same standards as the district court. *Id.* Under these standards, we hold that a reasonable jury could have found Robbins guilty beyond a reasonable doubt of conspiring to possess with intent to distribute cocaine.

■ To convict Robbins of conspiracy, the government had to prove that (1) a conspiracy existed; (2) Robbins knew of the conspiracy; and (3) Robbins knowingly became a part of the conspiracy. *United States v. Rork,* 981 F.2d 314, 316 (8th Cir.1992). Robbins concedes in his brief that a cocaine conspiracy existed in Junction City, Kansas, from 1989 until 1991. *See* Appellee's Br. at 6. "Once a conspiracy is established, even slight evidence connecting a defendant to the conspiracy may be sufficient to prove the defendant's involvement." *United States v. Ivey,* 915 F.2d 380, 384 (8th Cir.1990).

At trial, there was testimony that Robbins drove members of the conspiracy to crack houses and safe houses in Junction City every day for the duration of the conspiracy, sometimes making two or three trips in a day. When a member of the conspiracy needed a cab, he or she would call Robbins' company and say "pick up Slick." III Tr. at 72. Sometimes, the caller gave no address and Robbins would arrive anyway. The conspirators paid Robbins double his regular fare for these rides. Robbins told Walters that it was best to take his cabs because Robbins would not tell the police anything "[a]bout a drug operation." *Id.* at 203.

On one occasion, Robbins drove Ashley, Walters, McLean and another member of the conspiracy to a crack house to deliver drugs. Ashley left the cab and went to make the delivery. When Ashley did not return to the cab promptly, Robbins said " 'what's wrong with him ... how come he's staying in the place that long, he's messing up.' " VII Tr. at 31. Moreover, Ashley testified that Robbins brought a woman in his cab to one of the crack houses from which the conspirators sold crack. Several days later, Robbins "bragg[ed] [to Ashley that] he got [Ashley] a customer to purchase crack cocaine." I Tr. at 25.

There also was evidence that Walters rented houses from Robbins out of which Walters sold cocaine. Walters told Robbins he was going to sell cocaine from one house and paid Robbins $100 a month more than the market rate. Robbins did not rent the houses in Walters' name but instead used fabricated names. Viewing all of the evidence in the light most favorable to the government, we believe that the jury was entitled to find that Robbins was more than merely a cab driver who was doing his job. We cannot say that a reasonable jury *must* have harbored a reasonable doubt as to whether Robbins knew of the conspiracy and knowingly became a part of it. *See Pardue,* 983 F.2d at 847. Accordingly, we reverse the district court's grant of Robbins' motion for a judgment of acquittal.

### B. Motion for a New Trial

■ Robbins moved in the alternative for a new trial. He asserted that the district court had erroneously admitted evidence at trial obtained in violation of the Fourth Amendment. The district court agreed and granted Robbins' motion on the grounds that it should have suppressed the evidence and that its failure to do so prejudiced Robbins. Specifically, the court found that the warrant authorizing the government's search of Robbins' business was insufficiently specific in part and that the crack, pill bottle, and notes it had admitted at trial were seized "under the invalid portion of the warrant." Dist.Ct.Order at 10 (Mar. 22, 1993). We will reverse a district court's decision to grant a motion for a new trial only if the court abused its discretion. *See United States v. Wang,* 964 F.2d 811, 813–14 (8th Cir.1992).

■ The government first argues that the district court erred in concluding that the notes from Robbins' wallet were inadmissible. It asserts that the district court's finding that the wallet was seized under the warrant was clearly erroneous because the record shows that officers seized Robbins' wallet pursuant to a search incident to arrest. We disagree. The record shows that: police arrested Robbins at his cab business; Robbins took out his wallet and gave it to the cab dispatcher, who then put it in a drawer of the dispatch desk; and officers "later" retrieved the wallet from the desk. V Tr. at 155–56. The government has failed to show that the subsequent seizure of the wallet from the desk was contemporaneous with Robbins' arrest. *See United States v. Morales,* 923 F.2d 621, 627 (8th Cir.1991) (explaining that search must be contemporaneous with arrest). Thus, we believe that the district court's finding that officers were acting under the authority of the warrant when they seized Robbins' wallet was not clearly erroneous.

■ The government argues in the alternative that officers seized the wallet from Robbins' person pursuant to the warrant. Whether the wallet was seized from Robbins himself or the dispatcher's desk, however, is not relevant to our analysis. The warrant authorized the government to seize " 'documentary evidence of ownership of business, cash receipts, trip records, radio logs, and maintenance records of cabs.' " Dist.Ct.Order at 6 (quoting the warrant). We will assume without deciding that the district court erred in finding that the warrant was insufficiently specific. We will further assume that officers had the right to search Robbins' wallet for the items listed in the warrant.

■ In essence, the government's argument is that because the warrant authorized officers to *search* inside the wallet, it also authorized them to *seize* the wallet. This argument is a fundamental misapprehension of Fourth Amendment law. The record shows that the government did not discover the notes until it searched the wallet in the middle of Robbins' trial, months after it seized the wallet from his business. *See* V Tr. at 115.[1] The threshold issue is whether officers were entitled to seize the wallet in the first place. The general rule, of course, is that police may only seize items described in the search warrant, absent an exception to the warrant requirement.[2] *See United States v. Jenkins,* 901 F.2d 1075, 1081 (11th Cir.), *cert. denied,* 498 U.S. 901, 111 S.Ct. 259, 112 L.Ed.2d 216 (1990). Simply put, we believe that officers did not have authority to seize the wallet because the wallet itself was not an item described in the search warrant.

■ That items described in the warrant were *ultimately* found in the wallet[3] does not justify the initial seizure. A search warrant does not give police license to *seize* personal property not described in the warrant on the ground that such property *might* contain items that the warrant does describe; it only allows police to *search* such property at the place where the warrant is being executed if the property "legitimately might contain the [items] specified in the warrant," *United States v. Disla,* 805 F.2d 1340, 1346 (9th Cir.1986), and *then* to seize the described items they find inside or, under certain circumstances, the property itself once it is found to contain described items, *see United States v. Beusch,* 596 F.2d 871, 876–77 (9th Cir.1979) (holding that officers could seize entire ledgers once they discovered that some of the individual pages matched the

1. On the fifth day of trial, the government announced that it had just discovered the notes in the wallet the previous evening. The government "didn't see any evidentiary significance whatsoever to this billfold. It was only last night that we discovered the significance of those two pieces of paper that were down in the billfold." V Tr. at 115.

2. The government's only arguments for the admission of the notes are that police seized the wallet pursuant to a search incident to arrest or in the alternative pursuant to the warrant.

3. As we discuss below, one of the notes in the wallet was an adding tape that probably fell within the warrant description "cash receipts." The other note contained a handwritten name and telephone number.

warrant description; officers need not examine the entire ledger on the spot and then remove relevant individual pages).

Here, it is clear that the police either did not search the wallet on the premises of Robbins' business or, if they did search it at the time, found that it contained nothing of significance. *See supra* note 1. Under either scenario, the seizure was improper because police seized an item not described in the warrant—the wallet—either believing that it contained no items that the warrant described or not knowing whether it contained such items. *Cf. United States v. Tamura*, 694 F.2d 591, 595 n. 2 (9th Cir.1982) (explaining that *Beusch* "held ... that material not described in a search warrant may lawfully be seized when it is contained in the same physical volume, book, or file with other documents *known to be covered by the warrant*") (emphasis added). In short, the warrant here authorized police to search Robbins' wallet for certain types of documents; it did not authorize police to seize the wallet without first determining that it contained such documents. Outside of the "search incident to arrest" argument we have already rejected, the government does not claim that an exception to the warrant requirement justified either its seizure or subsequent search of the wallet. Thus, we hold that the district court correctly found that officers' seizure of Robbins' wallet violated the Fourth Amendment and that the notes from the wallet were thus inadmissible as substantive evidence of Robbins' guilt.

■ We need not address whether the district court erred in admitting the crack and pill bottle to impeach Robbins' testimony because we find that the admission of the notes was not harmless error beyond a reasonable doubt. The district court found that "[i]n light of the scant evidence against Robbins otherwise ... this evidence was severely damaging." Dist.Ct.Order at 10 n. 7. Although the court included the crack and pill bottle in this assessment, we believe that the admission of the notes, taken in isolation, was prejudicial. First, we agree with the district court that the evidence of Robbins' guilt was not overwhelming. The evidence consisted mostly of the testimony of Walters, McLean, Ashley, and another co-conspirator; outside of the notes, there was little physical evidence connecting Robbins to the organization.

One of the notes was an adding tape containing the handwritten names "Slick" and "Tim" and some numbers. Robbins referred to Walters as "Slick" and Ashley used the alias "Tim Reid." We agree with the government that the numbers and notations on the note corroborated Walters' testimony that Walters rented apartments from Robbins. The adding tape, however, was not merely corroborating evidence. It strengthened Walters' testimony that he rented apartments from Robbins to sell crack *and* it showed that not only Walters but also Ashley paid cash to Robbins for rent; this information suggested that the apartments were rented on behalf of the organization as a whole. In any event, that the adding tape was found in Robbins' wallet and contained the handwritten names of alleged co-conspirators made the evidence especially damaging. *Cf. Arizona v. Fulminante*, 499 U.S. 279, 296, 111 S.Ct. 1246, 1257–58, 113 L.Ed.2d 302 (1991) (explaining that a confession is " 'probably the most probative and damaging evidence [because the] admissions of a defendant come from the actor himself' ") (quoting *Bruton v. United States*, 391 U.S. 123, 139–40, 88 S.Ct. 1620, 1629–30, 20 L.Ed.2d 476 (1968) (White, J., dissenting)).

The other note bore the handwritten name "Mr. O" followed by a telephone number; testimony at trial showed that "Mr. O" was a member of the conspiracy. This note was also prejudicial because it strongly suggested that Robbins had a personal connection to a member of the conspiracy; it went to the heart of his defense that the members of the organization were merely his cab customers. Finally, the district court noted that the jury asked to see the notes during its deliberations. Under these facts, we cannot say that the error in admitting the notes was harmless beyond a reasonable doubt. *See Yates v.*

*Evatt,* 500 U.S. 391, 401–02, 111 S.Ct. 1884, 1892, 114 L.Ed.2d 432 (1991) (explaining that an error is harmless if it "appears 'beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained' ") (quoting *Chapman v. California,* 386 U.S. 18, 24, 87 S.Ct. 824, 828, 17 L.Ed.2d 705 (1967)), *overruled on other grounds by Estelle v. McGuire,* — U.S. —, — n. 4, 112 S.Ct. 475, 482 n. 4, 116 L.Ed.2d 385 (1991). Thus, we hold that the district court did not abuse its discretion in granting Robbins' motion for a new trial because its previous decision improperly admitting the notes was not harmless beyond a reasonable doubt.

## III. CONCLUSION

We reverse the district court's order granting Robbins' motion for a judgment of acquittal and affirm the court's order granting Robbins' motion for a new trial.