UNITED STATES of America, Plaintiff,

v.

Kerry L. BAKER, Defendant.

Case No. 8:01CR261.

United States District Court, D. Nebraska.

Nov. 22, 2002.

Robert F. Cryne, Assistant United States Attorney, Omaha, NE, for Plaintiff.

Steven J. Lefler, Lefler, Mullen Law Firm, Michael A. Nelsen, Hillman, Forman Law Firm, Omaha, NE, for Defendant.

Shannon P. O'Connor, Federal Public Defender's Office, Omaha, NE, for Material Witness.

MEMORANDUM AND ORDER

BATAILLON, District Judge.

Before the court is the defendant's motion, Filing No. 90, to acquit him of Count

III of the superceding indictment. On February 27, 2002, a jury found the defendant 1) guilty of Count I of the superceding indictment charging him with conspiracy to distribute crack cocaine in violation of 21 U.S.C. § 846 and 21 U.S.C. §§ 841(a)(1) and (b)(1); 2) not guilty of Count II of the superseding indictment charging him with possession of a firearm during a drug trafficking crime in violation of 18 U.S.C. § 924(c); and 3) guilty of Count III of the superseding indictment charging him with being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1) and 18 U.S.C. § 924(a)(2).

Following return of the jury's verdict, I granted the defendant's motion for acquittal on Count I. Filing No. 58. The government immediately filed a notice of appeal. Filing No. 69. The Eighth Circuit remanded the case to this court, Filing No. 80, with directions to sentence the defendant on Count III and to conduct any further proceedings necessary on the remaining counts. The defendant then filed the motion for a judgment of acquittal, Filing No. 90, that is the subject of this memorandum and order.

In July 2002, I permitted the defendant's trial counsel to withdraw and appointed new counsel. I directed the parties to brief the issues raised by the motion for acquittal as well as several other post-trial issues, which I enumerated. Filing Nos. 92 and 93. I have now reviewed the entire record, including the trial transcript, Filing No. 81; the parties' briefs, Filing Nos. 108, 109, 114, 115, and 116; and the applicable law. I conclude that the defendant's acquittal on Count I of the indictment will stand and that the defendant's motion for acquittal on Count III is denied. I first briefly address the issues raised in my order of July 11, 2002.

*Court's Judgment of Acquittal on Count I.* Thanks in part to the parties' able briefing of the issues raised in my July order, I conclude that I lack authority in this instance to grant the defendant a new trial on Count I. The question remains, however, whether I should reinstate the jury's guilty verdict or allow the judgment of acquittal to stand. After long and serious consideration, I have decided to allow the judgment of acquittal to stand.

■ A trial court may grant a timely motion for judgment of acquittal only if it finds, "view[ing] the evidence in the light most favorable to Government, resolving evidentiary conflicts in favor of the Government, and accepting all reasonable inferences drawn from the evidence that supports the jury's verdict," *United States v. Bates,* 77 F.3d 1101, 1104–05 (8th Cir. 1996), that "there is no interpretation of the evidence that would allow a reasonable jury to find the defendant guilty beyond a reasonable doubt," *United States v. Gomez,* 165 F.3d 650, 654 (8th Cir.1999). The court is not to weigh the evidence or to substitute its assessment of the credibility of the testimony for that of the jury. *United States v. Thompson,* 285 F.3d 731, 733 (8th Cir.2002). The court's latitude to grant the motion for judgment of acquittal is, quite obviously, "limited." *United States v. Robbins,* 21 F.3d 297, 298 (8th Cir.1994).

■ My decision to overturn the jury's guilty verdict on the conspiracy charge in Count I was not lightly made. I remain deeply concerned about the sufficiency of the evidence, as a matter of law, to support a charge against the defendant of conspiracy to distribute crack cocaine. The government proves a conspiracy under 21 U.S.C. § 846 by showing either directly or circumstantially that the defendant entered into an agreement with at least one other person that had as its objective a violation of the law. *United States v. Robinson,* 217 F.3d 560, 564 (8th

Cir.2000). I continue to believe that the government's witnesses and evidence failed to establish that the defendant conspired to distribute crack cocaine.

The physical evidence showed that if the defendant were involved with drugs, the drugs were likely marijuana and powder cocaine. For example, officers found no cocaine, whether powder or crack, on the defendant when they arrested him. The trace evidence found in the defendant's trash and garage tested positive for powder cocaine, not crack. The only drugs found in the defendant's house were twenty-two one-ounce bags of marijuana. Further, the government intercepted no phone calls between the defendant and co-defendant Gary Johnson—or between the defendant and anyone else—setting up drug deals for crack cocaine. The government set up no controlled buys of crack cocaine from the defendant. Nor did the government have surveillance photographs or reports of the defendant buying or selling crack cocaine. The government presented no other independent physical evidence tying the defendant to a conspiracy for sale or distribution of crack cocaine.

The testimonial evidence was only slightly more convincing, allegedly offered to corroborate the defendant's conspiracy with Gary Johnson to distribute crack cocaine. The government's case was based largely on the wholly incredible testimony of Cherie Carter. Carter's story, which the defendant's attorney succeeded in showing had changed several times from her arrest to her proffer to her trial testimony, was not only internally inconsistent but also primarily relevant to her own involvement in a conspiracy with Gary Johnson.[1] (Indeed, the trial in this matter often seemed to be a trial *in absentia* of co-defendant Johnson, who refused to testify at the defendant's trial.) I am well aware that it is the jury's province to weigh a witness's credibility, but it is enormously troubling to hear a key government witness blithely and repeatedly admit on cross-examination that she lied about critical elements of the stories she related to police following her arrest.

Like all witnesses testifying under a cooperation agreement, Carter was under pressure to provide substantial assistance to the government so that she could obtain a motion for downward departure in her own case.[2] But the information Carter provided crossed over the clear line between truthful information about the criminal activities in which she, Johnson, and the defendant were allegedly involved and transparently false information. Investigators discovered some of Carter's multiple fabrications before she testified at the defendant's trial, so the government, which offered her as a key witness to this court, certainly can be charged with knowledge of her unreliability and penchant for telling falsehoods. Yet the government insisted the jury could believe Carter's in-court version of events because she was under oath during her testimony, and had not been so constrained when she was spinning stories for investigators. Carter's refusal to recant her fabrications until confronted with solid evidence of her lies should have caused any fact finder to won-

---

**1.** The relationship between Johnson and Carter was cloudy as well as unsavory. According to trial testimony, Carter called Johnson "Daddy." Johnson is allegedly not only the father of one of Carter's children, but her former pimp.

**2.** Carter pleaded guilty to a one-count indictment of conspiracy to distribute and possess with intent to distribute cocaine. I sentenced her to 235 months in prison—almost 20 years. *See* 8:01CR260, Filing No. 24. As of the date of this opinion, the court has not been asked to decide a Rule 35 motion. With this ruling the government will keep its bargain by filing the motion.

der whether her uncorroborated testimony had any value whatever.

The government argues that with my ruling here, I am substituting my judgment of Carter's credibility for that of the jury. While I appreciate the sacred role of jurors as the sole judges of a witness's credibility, I note that the court has a responsibility to determine, in the first instance, whether a witness's testimony meets a minimal threshold of competence and credibility. The blind witness cannot testify about colors she cannot see; the deaf witness cannot testify about sounds he cannot hear; the expert witness cannot testify about matters outside her field of expertise. Likewise, Cherie Carter should not have been allowed to testify about the "truth" of any conspiracy involving the defendant, since she was motivated to lie, had lied repeatedly, and lied even as she testified in court.

The testimony of witness appearing on behalf of the government—even if under a cooperation agreement—conveys to the jury a sense that the government vouches for the witness's credibility since the government is relying on that witness to establish beyond a reasonable doubt the elements of the crime of which the defendant is accused. But that unspoken "seal of approval" is tarnished beyond rehabilitation when an individual, who has admitted her own guilt, fabricates stories of exaggerated criminal behavior to curry favor with the government. Just as the court should not permit the testimony of an unqualified expert witness, the court should not permit the testimony of a witness like Carter. The cost to society and to individual defendants is too high to allow the testimony of "cooperating" witnesses like Carter. For example, the defendant here faces a mandatory minimum sentence of twenty years if convicted of this drug offense. To base his conviction on the testimony of a witness like Carter would undermine the basis of our system of justice.

The testimony of the government's other witnesses to the alleged conspiracy, Roscoe Wallace, Darrell Howard, and Adrian Murphy—all of whom testified under the terms of their plea agreements—established that the defendant might have been selling powder cocaine, but failed to prove that the defendant was involved in any conspiracy to sell crack cocaine. Although Wallace testified in court that the defendant one time sold him 4.5 ounces of crack cocaine, in October 2001 Wallace had told an experienced narcotics officer to whom Wallace gave a statement that he had made a deal with the defendant for "cocaine," which the officer testified he assumed meant powder rather than crack cocaine.

Howard testified that he had not directly bought any powder or crack cocaine from the defendant, but he claimed that the defendant was present on two occasions when he purchased a half-kilogram of powder cocaine from an individual named Hoskins. Howard also testified that the defendant was present on two occasions when Howard sold Hoskins first a half-kilogram and then a kilogram of powder cocaine. Howard did not testify about any drug transactions involving Gary Johnson and the defendant.

Murphy testified that the defendant sold him two to three ounces of powder cocaine a couple of times a week for seven to nine months, until October 1999. Murphy testified that he would then "rock up" the powder cocaine to make crack cocaine, which he sold. Murphy also testified that he did not know the defendant's alleged co-conspirator Johnson, nor did he know Howard or Carter. Murphy's alleged dealings with the defendant thus ended one month before the conspiracy alleged in the indictment.

At best, the testimony of these witnesses suggests three possible conspiracies by individuals who were otherwise acting independently of each other. It also suggests that the defendant might have made isolated sales of powder cocaine at times before and during the conspiracy alleged in the indictment. I do not dispute the government's insistence that the prosecutor has great discretion to charge individuals with crimes, provided sufficient probable cause exists. The government in this case presented considerable evidence of wrongdoing on the defendant's behalf at least with respect possessing marijuana and, circumstantially, dealing powder cocaine. But the government's ducks were, so to speak, not all in a row. The evidence presented at trial did not prove beyond a reasonable doubt that the defendant conspired to distribute crack cocaine as charged in the indictment.

■ A judgment of acquittal is appropriate when the government fails to introduce "substantial evidence justifying an inference of guilt irrespective of any countervailing testimony that may be introduced." *United States v. Cunningham*, 83 F.3d 218, 222 (8th Cir.1996). The government's evidence in this case of the defendant's involvement in a conspiracy to distribute crack cocaine was anything but substantial. Given the paucity of the evidence that the defendant was involved in a conspiracy to distribute crack cocaine, I believe that my decision to overturn the jury's guilty verdict was correct.

*Defendant's Motion for Judgment of Acquittal on Count III.* The defendant's motion for a judgment of acquittal on Count III, the felon in possession of a firearm charge, is based on "prosecutorial vindictiveness as alleged in the Objection to the Presentence Investigation." Filing No. 90 at 1. During the sentencing hearing the defendant through his attorney, Mr. Nelsen, withdrew any motions based upon prosecutorial vindictiveness. Since the allegation of prosecutorial vindictiveness is the only basis for the defendant's motion for judgment of acquittal on Count III the court overrules the motion.

IT IS THEREFORE ORDERED that the defendant's motion, Filing No. 90, for a judgment of acquittal on Count III of the superseding Indictment is denied.