**Michale T. PETERSEN, Petitioner,**

v.

**UNITED STATES of America, Respondent.**

**No. CIV.03–3004.**

United States District Court,
D. South Dakota,
Central Division.

Jan. 4, 2005.

Terry L. Pechota, Pechota Law Office, Rapid City, SD, for Petitioner.

Thomas J. Wright, Assistant United States Attorney, Sioux Falls, SD, for Respondent.

## ORDER ADOPTING REPORT AND RECOMMENDATION

**KORNMANN, District Judge.**

The Court submitted the above-entitled matter to U.S. Magistrate Judge Mark A. Moreno and the magistrate judge submitted his report and recommendation to the Court on September 23, 2004, Doc. 27. The report and recommendation was served on the petitioner as required by 28 U.S.C. § 636 and petitioner has filed no written objections thereto.

The Court has reviewed the file and finds that the report and recommendation of the magistrate judge should be accepted and the case dismissed.

Now, therefore,

IT IS ORDERED:

1. The Honorable Charles B. Kornmann, Unit-

1. The report and recommendation of the U.S. Magistrate Judge filed September 23, 2004, Doc. 27, shall be and is hereby adopted as the findings of fact and conclusions of law herein.

2. The motion to vacate, set aside, or correct sentence is denied and this matter is dismissed with prejudice.

## REPORT AND RECOMMENDATIONS FOR DISPOSITION OF MOTION FOR RELIEF UNDER 28 U.S.C. § 2255

**MORENO, United States Magistrate Judge.**

[¶ 1] The above-captioned 28 U.S.C. § 2255 case was referred to this Court by the District Court[1] pursuant to 28 U.S.C. § 636(b)(1)(B) for the purpose of conducting any necessary hearings, including evidentiary hearings, and submitting proposed findings of fact and recommendations for disposition thereof.

[¶ 2] Having carefully reviewed and considered all of the records on file and being fully advised in the premises, the Court does now make and propose the following Findings, Report and Recommendations for disposition of the case.

### I.

[¶ 3] After a jury trial, Petitioner, Michael T. Petersen (Petersen) was convicted of simple assault, assault by striking, beating or wounding, aggravated sexual abuse and first degree burglary. On October 30, 2000, he was sentenced to six months imprisonment on the two assault offenses and 100 months imprisonment on the sexual abuse and burglary offenses, all to run concurrently. Respondent, United States of America (Government), appealed the trial court's five-level downward departure

ed States District Judge, presiding.

and the Eighth Circuit Court of Appeals reversed and remanded for resentencing. *See United States v. Petersen,* 276 F.3d 432, 439 (8th Cir.2002). Petersen was subsequently resentenced on March 26, 2002 to concurrent custody terms of six months on the assault offenses and 168 months on the sexual abuse and burglary offenses.

[¶ 4] In his § 2255 Motion, Petersen claims that:

1. The trial court committed ten separate errors which affected his convictions; and
2. His counsel was ineffective in failing to:
   a. Raise certain pre-trial issues;
   b. Object to specific evidence;
   c. Adequately argue a motion for judgment of acquittal; and
   d. Appeal and brief various trial level errors.

Upon initial review, the District Court held that it was not required to decide, at that time, the merits of Petersen's substantive claims, but only whether appellate counsel was ineffective in failing to properly perfect an appeal by filing a merits brief. The Court directed this Court to evaluate whether appellate counsel was objectively unreasonable in determining that there were no issues to raise on appeal that had any arguable merit, and, if so, whether Petersen was prejudiced by his counsel's failure to file a merits brief.

[¶ 5] In an effort to properly assess Petersen's ineffective assistance of appellate counsel claims under *Smith v. Robbins,* 528 U.S. 259, 120 S.Ct. 746, 145 L.Ed.2d 756 (2000) and *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), this Court granted Petersen leave to list, in an all inclusive fashion, those issues that he maintains his counsel should have argued in his merits brief on direct appeal. The Court thereafter received Petersen's list and the Government's response thereto and believes it is in a position now to pass on the ineffective assistance claims and whether Petersen is entitled to an evidentiary hearing on the same.

## II.

[¶ 6] Petersen does not specifically request that he be given an evidentiary hearing on his Motion. Nonetheless, this Court must determine, in accordance with Rules 4(b) and 8(a) of the Rules Governing § 2255 Proceedings (§ 2255 Rules) and the District Court's March 8, 2004 referral Order, whether such a hearing is required in this instance.

[¶ 7] An evidentiary hearing need not be held (1) if the petitioner's allegations, accepted as true, would not entitle him to relief; or (2) if the allegations cannot be accepted as true because they are contradicted by the record, are inherently incredible or are conclusions rather than statements of fact. *Delgado v. United States,* 162 F.3d 981, 983 (8th Cir.1998) (quoting *Engelen v. United States,* 68 F.3d 238, 240 (8th Cir.1995)). Likewise, an evidentiary hearing is not required "where the files and records of the case conclusively show that the [petitioner] is not entitled to relief." *Standing Bear v. United States,* 68 F.3d 271, 272 (8th Cir.1995), *cert. denied,* 517 U.S. 1147, 116 S.Ct. 1444, 134 L.Ed.2d 564 (1996); *see also Kingsberry v. United States,* 202 F.3d 1030, 1031 (8th Cir.2000); *Holloway v. United States,* 960 F.2d 1348, 1351 (8th Cir.1992).

[¶ 8] Petersen's ineffective assistance of counsel claims are ones that are capable of resolution from the record. *Bear Stops v. United States,* 204 F.Supp.2d 1209, 1227 (D.S.D.2002), *aff'd,* 339 F.3d 777 (8th Cir.), *cert. denied,* 540 U.S. 1094, 124 S.Ct. 970, 157 L.Ed.2d 803 (2003); *see also, Blankenship v. United States,* 159 F.3d 336, 337–39 (8th Cir.1998), *cert denied,* 525 U.S. 1090, 119 S.Ct. 844, 142 L.Ed.2d 699 (1999);

*Payne v. United States,* 78 F.3d 343, 347 (8th Cir.1996). After close scrutiny of the record, the Court is convinced that Petersen cannot prevail on his claims. *See Cheek v. United States,* 858 F.2d 1330, 1333 (8th Cir.1988); *see also Bradshaw v. United States,* 153 F.3d 704, 708 (8th Cir. 1998). As such, Petersen is not entitled to an evidentiary hearing and the Court shall proceed to dispose of his Motion in a summary manner "as justice dictates." *See* Rules 4(b) and 8(a) of the § 2255 Rules.

### III.

[¶ 9] In the context of ineffective assistance of appellate counsel claims, the United States Supreme Court has made clear that:

> [T]he proper standard for evaluating [a petitioner's] claim that appellate counsel was ineffective in neglecting to file a merits brief is that enunciated in *Strickland* .... [The petitioner] must first show that his counsel was objectively unreasonable in failing to find arguable issues to appeal—that is, that counsel unreasonably failed to discover nonfrivolous issues and to file a merits brief raising them. If [the petitioner] succeeds in such a showing, he then has the burden of demonstrating prejudice. That is, he must show a reasonable probability that, but for his counsel's unreasonable failure to file a merits brief, he would have prevailed on his appeal.

*Smith,* 528 U.S. at 285, 120 S.Ct. 746 (internal citations omitted). Petersen's case does not fall within any of the three categories of cases described in *Strickland* in which a reviewing court must presume prejudice rather than require him to demonstrate it. *Smith,* 528 U.S. at 287, 120 S.Ct. 746.

[¶ 10] Nonetheless, unlike the situation where counsel fails to raise a certain *claim* on appeal, where appellate counsel is alleged to have erroneously failed to file a merits *brief,* the Supreme Court has observed that:

> [I]t will be easier for [the petitioner] to satisfy the first part of the *Strickland* test, for it is only necessary for him to show that a reasonably competent attorney would have found one nonfrivolous issue warranting a merits brief, rather than showing that a particular nonfrivolous issue was clearly stronger than issues that counsel did present. In both cases, however, the prejudice analysis will be the same.

*Smith,* 528 U.S. at 288 & n. 16, 120 S.Ct. 746.

[¶ 11] Thus, in order for Petersen to prevail on his ineffective assistance of counsel claims, he must satisfy both prongs of the *Strickland* test. *Id.* at 289, 120 S.Ct. 746. Unless he can show that his counsel's decision not to file a merits brief was deficient and that this deficiency prejudiced his ability to succeed on appeal, he cannot obtain § 2255 relief. *Id.* at 285–86, 120 S.Ct. 746; *see also Bear Stops,* 204 F.Supp.2d at 1222–24, 1233–34, *aff'd,* 339 F.3d 777, 781–82.

[¶ 12] Although courts ordinarily discuss the performance component of an ineffectiveness claim prior to the prejudice component, there is no reason for a court deciding such a claim to approach the inquiry in the same order or to address both components if a petitioner makes an insufficient showing on one of them. *Strickland,* 466 U.S. at 697, 104 S.Ct. 2052. A court, therefore, need not determine the objective reasonableness of appellate counsel's conduct before examining the prejudice suffered by the petitioner as a result of counsel's alleged failures. *Id.* "If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed." *Id.*

[¶ 13] With these legal precepts in mind, Petersen's claims are ready to be addressed and scrutinized.

## IV.

[¶ 14] Petersen initially claims that the Government breached its agreement not to appeal his sentence. Petersen maintains that the Government represented that it would not appeal his sentence if no appeal was taken of his conviction, and that the Government appealed anyway. In support of his claim that an agreement existed that the Government breached, Petersen cites to and requests that "exhibit 1" be considered. Such an exhibit, however, was never attached to Petersen's List of Non–Frivolous issues or to any other pleading of his, and is not contained in the court file.

[¶ 15] Furthermore, Petersen's claim that the Government agreed not to appeal his sentence is not supported by the sentencing transcript. Nor is his claim supported by any of the records on file. It bears noting that whether or not an appeal will be taken by the Government in an individual case is a decision that is made by the Solicitor General's Office and no documentary evidence has been produced which demonstrates or even suggests that an agreement, along the lines Petersen has described, was ever made or entered into.

[¶ 16] Significantly, the letter from Petersen's appellate counsel, attached to the Government's response, makes no reference whatsoever to there ever being an agreement between Petersen and the Government not to appeal. Instead, counsel's letter indicates that the decision not to pursue an appeal was based on counsel's belief that there were no potentially reversible errors made by the trial court, and not because of some belief or understanding that the Government had no intention of appealing the sentence that was imposed.

[¶ 17] Moreover, the declaration of Petersen's parents, presumably submitted to buttress his claim that he had a "non-appeal agreement" with the Government, actually undercuts this claim. In his sworn declaration, Petersen's father states that he recalled having a conversation with Petersen's counsel after the sentencing wherein counsel represented that he was going to file an appeal on Petersen's behalf. Such a statement, however, runs contrary to Petersen's assertion that he had no intention of appealing his conviction because of an alleged mutual agreement with the Government not to appeal.

[¶ 18] Petersen has failed to prove, by a preponderance of the evidence, that he and the Government had an agreement not to appeal that was breached or otherwise disregarded. His claim for relief, premised on a so-called "breached agreement," has no basis in fact or support in the record and the cases he relies on, namely, *Santobello v. New York*, 404 U.S. 257, 92 S.Ct. 495, 30 L.Ed.2d 427 (1971); *United States v. DeWitt*, 366 F.3d 667 (8th Cir.2004); *Margalli–Olvera v. I.N.S.*, 43 F.3d 345 (8th Cir.1994), are inapposite.

## V.

[¶ 19] Petersen next claims that his appellate counsel was ineffective because counsel did not appeal the fact that Petersen was convicted of burglarizing his own home. Apparently, Petersen maintains that his first degree burglary conviction likely would have been vacated on appeal. A review of the Eighth Circuit's decision, however, reveals otherwise.

[¶ 20] While recognizing that engaging in a burglary of one's own home would not be "typical", the Appeals Court noted that Petersen's conduct, especially in light of the protection order that was in place against him, was "typical" of a burglary:

Certain facts in this case are *typical* of a burglary: Petersen parked his vehicle off of the premises implying concealment, he forced entry into the home, and he wore rubber gloves while inside the home. Petersen's right of access to the home had been temporarily restrained by court order.

276 F.3d at 438 (emphasis added). Believing that Petersen's actions were "typical" of a burglary, albeit in the context of a sentencing departure, it is not likely that the Court of Appeals would have reversed Petersen's burglary conviction. In any event, as Petersen himself recognizes, there is authority for the proposition that a defendant can be convicted of burglarizing the marital home in which an estranged spouse resides. *See e.g. State v. Hagedorn*, 679 N.W.2d 666 (Iowa 2004) and cases cited therein. Given the facts of his case, the Eighth Circuit's view of them, and the state of the case law, Petersen would have had little chance of overturning his burglary conviction on appeal.

## VI.

[¶ 21] Petersen's third claim is that his appellate counsel should have argued to the Eighth Circuit that his constitutional rights were violated because he was charged with separate counts of felony assault and was acquitted of all of them at trial. It is true that the jury found Petersen not guilty of all of the felony assault charges. The jury, however, found him guilty of two misdemeanor charges of assault and of aggravated sexual abuse and first degree burglary. Petersen's argument, therefore, would have more force if he had been found guilty of one or more of the felony assault offenses. The fact that he was acquitted of these offenses substantially weakens his constitutional claim that these offenses "overlapped" and thus made him more criminally culpable in the eyes of the jury.

[¶ 22] Petersen's claim is based largely on the rule that prohibits the use of multiplicitous pleading practices. "Multiplicity" is the charging of a single offense in several counts. *United States v. Webber*, 255 F.3d 523, 527 (8th Cir.2001); *United States v. Rimell*, 21 F.3d 281, 287 (8th Cir.)(citing *Gerberding v. United States*, 471 F.2d 55, 58 (8th Cir.1973)), *cert. denied*, 513 U.S. 976, 115 S.Ct. 453, 130 L.Ed.2d 362 (1984). "The vice of multiplicity is that it may lead to multiple sentences for the same offense." *United States v. Street*, 66 F.3d 969, 975 (8th Cir.1995) (quoting *United States v. Kazenbach*, 824 F.2d 649, 651 (8th Cir.1987)). Likewise, it may suggest to the jury that the defendant committed more than one crime. *United States v. Christner*, 66 F.3d 922, 927 (8th Cir.1995); *United States v. Dixon*, 921 F.2d 194, 196 (8th Cir.1990). Of course, multiple sentences for a single offense is constitutionally impermissible. In deciding whether an indictment is multiplicitous, courts apply the test set forth in *Blockburger v. United States*, 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932). *United States v. Wilkinson*, 124 F.3d 971, 975 (8th Cir.1997), *cert. denied*, 522 U.S. 1133, 118 S.Ct. 1089, 140 L.Ed.2d 146 (1998). Under *Blockburger*, "where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two defenses or only one is whether each provision requires proof of a fact which the other does not." *Wilkinson*, 124 F.3d at 975 (quoting *Blockburger*, 284 U.S. at 304, 52 S.Ct. 180). The *Blockburger* test is met "notwithstanding a substantial overlap in the proof offered to establish the crimes." *Wilkinson*, 124 F.3d at 975 (quoting *Iannelli v. United States*, 420 U.S. 770, 785, n. 17, 95 S.Ct. 1284, 43 L.Ed.2d 616 (1975)).

[¶ 23] After reading and comparing the three assault offenses Petersen was

charged with and the jury instructions for them, it is apparent that each of them requires proof of several facts not required to establish the others. *Wilkinson,* 124 F.3d at 975; *Street,* 66 F.3d at 975–76. Moreover, the separate assault counts relate to distinct violations of law, each of which are factually based. *Wilkinson,* 124 F.3d at 975. While overlapping evidence was presented to prove the commission of each of the three assaults, this fact does not transform a properly charged indictment into an impermissibly multiplicitous one. *Id.* Inasmuch as each charge required proof of at least one element that the others did not, the Superseding Indictment against Petersen was not multiplicitous.

[¶ 24] In any event, Petersen was acquitted of the three assault offenses he claims are multiplicitous and received concurrent sentences on two separate, lesser included, misdemeanors. He therefore was not subject to the risk of multiple punishments for a single offense, the principal danger that the multiplicity doctrine was intended to address. *Webber,* 255 F.3d at 527.

[¶ 25] Under these circumstances, the Eighth Circuit would have been hard pressed to order dismissal or consolidation of the felony counts on multiplicity grounds.

[¶ 26] Petersen secondarily maintains that his constitutional rights were violated by the pyramiding of charges, each of which he says, "required the same proof." A cursory reading of the Superseding Indictment shows this to be untrue. Indeed, Petersen's aggravated sexual abuse conviction required a sexual act, something which is not an element of the assault or burglary charges. Similarly, Petersen's conviction for burglary required that he enter or remain in an occupied structure, neither of which is required by the sexual abuse or assault offenses. Pet-

ersen's constitutional rights, therefore, were not violated.

## VII.

[¶ 27] Petersen also claims that his appellate counsel should have argued to the Eighth Circuit that the trial court erred when it refused to allow him to cross-examine and present to the jury alleged psychological problems his estranged wife and the victim, Calley Petersen (Calley), had since 1995. Specifically, Petersen asserts that he was denied the opportunity to have Calley examined by a psychiatrist or to call any of her treating doctors. He contends that he was entitled to present evidence and explore, on cross-examination, Calley's mental state because such evidence had a bearing on her credibility.

[¶ 28] Petersen's claim ignores, or at least glosses over, the time and inquiry the trial court made into Calley's psychiatric/psychological problems and her overall mental state. The record reveals that the court carefully considered these issues and took testimony from Calley's psychiatrist and psychologist. Both of these mental health professionals testified, out of the presence of the jury, that they had no reason to believe that Calley was suffering from any kind of condition that would impair/affect her memory or make it more likely that she would fabricate stories or inflict injury upon herself. More importantly, the testimony offered by the two professionals shows that whatever minor problems Calley may have suffered from did not have any bearing on her ability to recall what happened on the night in question.

[¶ 29] Petersen's claim likewise overlooks the issue of privilege. The United States Supreme Court has made it clear that there is a psychotherapist privilege under Fed.R.Evid. 501 that extends to confidential communications between psychia-

trists and psychologists and their patients in the course of diagnosis or treatment. *Jaffee v. Redmond,* 518 U.S. 1, 10–15, 116 S.Ct. 1923, 135 L.Ed.2d 337 (1996). Petersen provides no authority or any explanation for how or why Calley's protection from compelled disclosure of communications with her psychiatrist and psychologist should be, or has ever been, secondary and/or inferior to a criminal defendant's trial rights. Significantly, the psychiatrist and psychologist in this case both moved to quash the subpoenas they received on privilege grounds and their motions were granted. Petersen fails to show that the trial court's ruling amounted to reversible error.

[¶ 30] The cases Petersen cites in support of his position, to wit, *Delaware v. Van Arsdall,* 475 U.S. 673, 106 S.Ct. 1431, 89 L.Ed.2d 674 (1986); *Olden v. Kentucky,* 488 U.S. 227, 109 S.Ct. 480, 102 L.Ed.2d 513 (1988); and *United States v. Fowler,* 465 F.2d 664 (D.C.Cir.1972), are not controlling. None of them involve or discuss the psychiatric/psychological problems of a victim/witness or the exploration of them as a matter of constitutional right. Appealing this claim, thus, would have done Petersen no good.

## VIII.

[¶ 31] Petersen's fifth claim is that appellate counsel was ineffective because counsel did not argue on appeal that the trial court erred when it denied the right to cross-examine Calley concerning a hickey that was allegedly present on her neck at trial and at P.P.'s [2] competency hearing.

---

2.  P.P. is the Petersen's four-year-old son who was a witness to some of what transpired between Petersen and Calley.

3.  The record indicates that Calley may have had some "blotches" on her neck at trial because Petersen's counsel questioned her about them. Whether these "blotches" and

[¶ 32] Petersen, however, does not include any record citations which substantiate that Calley in fact had a hickey on her neck during the trial proceeding.[3] His claim, therefore, is subject to dismissal as being conclusory and lacking the sufficiency necessary to state a claim for relief. *Hollis v. United States,* 796 F.2d 1043, 1046 (8th Cir.) (vague and conclusory allegations are not sufficient to state a ground for relief under 28 U.S.C. § 2255), *cert. denied,* 479 U.S. 965, 107 S.Ct. 468, 93 L.Ed.2d 412 (1986); *Smith v. United States,* 677 F.2d 39, 41 (8th Cir.1982) (conclusory allegations, unsupported by any specifics, are subject to dismissal).

[¶ 33] Regardless, even if Calley had a hickey on her neck that Petersen noticed, one or more of the jurors would have certainly observed it as well and considered this "evidence" in their deliberations.[4] In addition, whether Calley had a visible hickey on her neck at a hearing, held outside the jury, is of little, if any, significance and by no means would justify a reversal of any of Petersen's convictions in view of the record in this case.

## IX.

[¶ 34] As a further ground for relief, Petersen claims that his appellate counsel should have argued on appeal that the trial court committed prejudicial error by allowing the jury to hear evidence concerning two sexual indiscretions he engaged in that were unrelated to the charged incident. Testimony was presented that Petersen had or attempted to engage in sexual contact with Jackie Bowker–Gray and Jesse Hintz on separate occasions. The testimo-

---

the "hickey" Petersen refers to are one and the same is unclear.

4.  This is especially true given the questions Calley was asked by Petersen's counsel about the "blotches" on her neck during cross-examination.

ny was received under Federal Rule of Evidence (Rule) 413, but the Court gave a limiting instruction concerning the same. Petersen maintains that this testimony was not admissible because it was not relevant to the resultant assault and burglary offenses, was dissimilar to the charges contained in the Superseding Indictment, and was overly prejudicial under Rule 403's balancing test.

■ [¶ 35] In 1994, Congress enacted a special rule of evidence for criminal cases involving certain sexual offenses, including one of the offenses for which Petersen was tried here. This rule, codified as Rule 413, states that in such cases "evidence of the defendant's commission of another offense or offenses of sexual assault is admissible, and may be considered for its bearing on any matter to which it is relevant." Fed. R.Evid. 413(a). The Eighth Circuit has previously held that Rule 413 supersedes Rule 404's prohibition against character evidence, allowing testimony of prior bad acts in sexual assault cases, provided that it is relevant. *United States v. Blue Bird*, 372 F.3d 989, 992 (8th Cir.2004); *United States v. LeCompte*, 131 F.3d 767, 769 (8th Cir.1997). Of course, evidence admissible under Rule 413 remains subject to Rule 403, which requires weighing the probative value of the evidence against the potential for unfair prejudice "in such a way as to allow [Rule 413 its] intended effect." *United States v. Withorn*, 204 F.3d 790, 794 (8th Cir.2000); *United States v. Mound*, 149 F.3d 799, 801–02 (8th Cir. 1998), *cert. denied*, 525 U.S. 1089, 119 S.Ct. 842, 142 L.Ed.2d 697 (1999). Thus, in determining the admissibility of the challenged testimony, a reviewing court is obligated to take into account Congress' policy judgment that Rule 413 was "justified by the distinctive characteristics of the cases it will affect," and the "strong legislative judgment that evidence of prior sexual offenses should ordinarily be admissible." *Withorn*, 204 F.3d at 794; *see also Mound*, 149 F.3d at 801; *LeCompte*, 131 F.3d at 769.

■ [¶ 36] The incidents Bower–Gray and Hintz described were relevant and substantially similar to the aggravated sexual abuse offense Petersen was convicted of. Reviewing *de novo*, the trial court's decision to admit the evidence, this Court is unable to find or conclude that an error was committed that prejudiced Petersen's right to a fair trial. *Mound*, 149 F.3d at 802; *LeCompte*, 131 F.3d at 770, *see and compare Blue Bird*, 372 F.3d at 994–95. The trial court was well aware of the requirements of Rule 403 and properly applied the Rule to the facts and circumstances present. Moreover, any prejudice that may have occurred was minimized by the limiting instruction given to the jury immediately after the evidence was admitted.[5] *Mound*, 149 F.3d at 802.

[¶ 37] Having reviewed the merits of Petersen's evidentiary claim, the Court is satisfied that the same would not have been sustained on appeal. This being the case, Petersen's appellate counsel was not ineffective for failing or refusing to raise such a claim.

## X.

[¶ 38] In a related claim, Petersen alleges that he was denied the right to cross-examine Bowker–Gray about her marital problems and that the failure to raise this issue on appeal amounted to ineffective assistance of counsel. Recall that Bowker–Gray is one of the two women who testified at trial that Petersen had sexually abused her or at least tried to on a previous occasion. In his most recent descrip-

---

5. Notably, the instruction included an admonishment to the jury that "[i]t [the Rule 413 evidence] certainly does not prove that the [D]efendant sexually assaulted his estranged wife at the time alleged by the [G]overnment".

tion of the claim, Petersen states that at the time that the sexual contact. incident with Bowker–Gray took place, she "was having marital problems with her husband making it more likely that she was either making advances toward [Petersen] or consented to his advances."

■■■■ [¶ 39] Petersen, however, testified at trial that the incident with Bowker–Gray never occurred. In fact, on direct examination, he made clear that the incident not only did not happen, but was also a made up story that "hurt" him and made him feel "terrible." Petersen cannot have it both ways. He cannot, on the one hand, contend that Bowker–Gray initiated the sexual advances or consented to them, and on the other hand, maintain that the incident with Bowker–Gray never took place. Given these irreconcilable positions, Petersen's appellate counsel certainly cannot be faulted for not having argued for a new trial based on the inability to delve into an incident Petersen maintains Bowker–Gray initiated and/or consented to in the face of his own under oath testimony that the incident was a made up lie and never happened. Had counsel made the argument on appeal that Petersen now complains of, the same would have been given short shrift by the Eighth Circuit. Petersen's ineffectiveness claim is baseless under either prong of the *Strickland* test.

### XI.

[¶ 40] Ever persistent, Petersen claims that his counsel was ineffective because he did not argue on appeal that the trial court erred by failing to grant him a motion for judgment of acquittal after the Government rested and at the conclusion of the presentation of all evidence in the case. He points to conflicting evidence in the record and to matters that relate to the credibility of Calley's testimony.

[¶ 41] At the outset, in view of the fact that the Eighth Circuit, after review of the entire record, ordered that Petersen's 100–month sentence be increased to 168 months, it appears clear that the Appeals Court did not believe that Petersen was innocent of the charges and wrongfully imprisoned, but rather was guilty of the offenses he was convicted of and should have received more time in prison than what was originally imposed. The Eighth Circuit's opinion, including its recitation of the facts and its legal analysis, plainly show that it believed that Petersen was a guilty man who had not been punished enough rather than a criminal defendant who was wrongfully denied a motion for judgment of acquittal.

[¶ 42] Aside from this, Petersen's claim effectively seeks to have this Court substitute its judgment for that of the jury based on a cold record. The jury heard all the evidence, considered any conflicts in the same and determined the weight to be given to Calley's testimony. It also had the ability to see and hear the witnesses testify in person.

■■■■ [¶ 43] It must be remembered that "when considering a motion for judgment of acquittal a [trial] court has very limited latitude." *United States v. Robbins*, 21 F.3d 297, 298–99 (8th Cir.1994) (citations and internal quotations omitted). The court does not "weigh the evidence or assess the credibility of the witnesses." *Id.* at 299. Instead, the court "views the evidence in the light most favorable to the [G]overnment, resolving evidentiary conflicts in favor of the [G]overnment, and accepting all reasonable inferences drawn from the evidence that support[ ] the jury's verdict." *United States v. Bates*, 77 F.3d 1101, 1104–05 (8th Cir.) (quoting *United States v. Erdman*, 953 F.2d 387, 389 (8th Cir.), *cert. denied*, 505 U.S. 1211, 112 S.Ct. 3009, 120 L.Ed.2d 883 (1992)), *cert. denied*, 519 U.S. 884, 117 S.Ct. 215, 136 L.Ed.2d 149 (1996). "The jury's ver-

dict must be upheld if there is an interpretation of the evidence that would allow a reasonable-minded jury to conclude guilt beyond a reasonable doubt." *Bates,* 77 F.3d at 1105 (quoting *Erdman,* 953 F.2d at 389). The Eighth Circuit applies the same standard on appeal. *Robbins,* 21 F.3d at 299.

[¶ 44] Applying these tenets to the instant case, this Court believes that a reasonable jury could have found Petersen guilty of the offenses he was convicted of beyond a reasonable doubt and that the Eighth Circuit, if the issue was appealed, would not have granted him a judgment of acquittal. There is ample evidence in the record to sustain the verdict and no compelling reason to overturn it. Accordingly, the fact that Petersen's judgment of acquittal claim was not appealed matters not and does not rise to the level of deficient performance or prejudice as contemplated by *Strickland.*

## XII.

[¶ 45] In a similar broad-based claim, Petersen contends that the trial court made various evidentiary errors that should have been raised on appeal by his counsel. He does not point to facts in the record which substantiate his claim of trial error or cite any authority in support of the same. The cursory nature of the claim and the six components of it, makes meaningful review difficult and time consuming.

[¶ 46] For example, Petersen maintains that the FBI agent was allowed to testify beyond his competency about medical matters. Petersen, however, does not indicate what medical matters he is referring to. Nor does he explain how he was prejudiced by them, especially given Dr. Perereia's testimony as to Calley's injuries.[6]

[¶ 47] Moreover, some of Petersen's contentions, after scrutiny of the record, make little sense. Petersen's contention that the trial court impermissibly allowed hearsay from Calley that P.P., the couple's child, stated "why are you hitting my mom?" turns a blind eye to the fact that P.P. (the supposed hearsay declarant) testified at trial that he saw Petersen strike Calley with a flashlight. In addition, while initially allowing a legal pad containing Calley's handwritten journal entries into evidence, the trial court subsequently determined that the contents of the pad were irrelevant and directed that it be considered for a limited purpose only. That purpose, according to the court, was to show that Petersen read the notes on the pad and assaulted Calley based on what he read. Furthermore, Petersen's trial counsel was allowed to cross-examine Calley about the flashlight that he assaulted her with. And, the court's reversal of its prior Rule 404(b) ruling was because Petersen's counsel opened the door for the admission of such evidence to the extent that the jury would have likely been misled without the same being admitted. Finally, the hearsay statements testified to by an emergency room nurse, as to what Calley told her during the course of a hospital examination on November 3rd, were arguably admissible under the excited utterance or medical diagnosis/treatment exceptions to the hearsay rule. The statements were also cumulative to other evidence and testimony that was properly admitted.

[¶ 48] Petersen's evidentiary contentions, even if properly raised and passed on, were not apt to have resulted in a reversal of the convictions the Eighth Circuit let stand. Nor do these contentions

---

6. Dr. Perereia is a neurosurgeon who testified about Calley telling him that Peterson had raped her, hit her over the head with a flashlight and choked her that night. More impor-

tantly, he opined that Calley's injuries were not self-inflicted and, in doing so, helped rebut one of Petersen's defenses.

taint or otherwise undermine the reliability of this Court's confidence in the result reached by the jury.

## XIII.

[¶ 49] Petersen lastly claims that appellate counsel should have appealed the trial court's obstruction of justice enhancement and that counsel's failure to do so was both deficient and prejudicial. Petersen implies that had the Eighth Circuit reviewed this issue, it would, in all probability, have vacated the two-level enhancement that was imposed.

[¶ 50] Petersen boldly states that "there was no specific finding of willful obstruction" by the trial court and that the "two-level increase should not have been given." Contrary to Petersen's statements, the Eighth Circuit not only addressed the obstruction of justice enhancement, quoting the court's characterization of Petersen's testimony at trial to be the "most implausible defense testimony" it had ever heard, *Petersen*, 276 F.3d at 435, n. 1., but also indicated, by virtue of its disposition of the sentencing issue, that Petersen had little hope of prevailing on his obstruction of justice claim. If the Appeals Court had thought that an obstruction enhancement was unwarranted, it surely would not have quoted with apparent approval the trial court's characterization of Petersen's testimony or ruled that the court was too lenient when it sentenced Petersen to 100 months in prison.

## XIV.

[¶ 51] This Court has carefully reviewed all of the grounds for relief alleged by Petersen in his § 2255 Motion, and after doing so, finds and concludes the same are without merit and do not justify vacating, setting aside or otherwise correcting any of his convictions or the sentences he received on them. Instead, the record reveals that Petersen received a fair trial and was properly sentenced on remand.

His convictions and sentences therefore need not be disturbed and should remain as is.

## XV.

[¶ 52] Petersen has failed to satisfy both prongs of the *Strickland* test and therefore cannot establish the requisite ineffective assistance of appellate counsel. Petersen has failed to show that his counsel was objectively unreasonable in failing to find and raise arguable issues on appeal and that he was prejudiced by his counsel's nonfeasance. *Smith*, 528 U.S. at 285, 289, 120 S.Ct. 746. Nor has he demonstrated that he is entitled to § 2255 relief. Accordingly, based on the foregoing Findings of Fact and legal discussion and pursuant to § 636(b) and Rule 8(b) of the § 2255 Rules, it is hereby

[¶ 53] RECOMMENDED that the Government's Motion to Dismiss, Docket No. 4 be granted; it is further

[¶ 54] RECOMMENDED that Petersen's § 2255 Motion, Docket No. 1, as amended and refined, be denied in all respects and that the case be dismissed with prejudice.

United States District Court, D. Alaska.